



EXHIBIT

C

Xavier Home (/) > HCAP (../index) > 1. Introduction

# 1. INTRODUCTION

## 1.1 Purpose

Individuals who believe they have been harassed, individuals charged with harassment, and individuals with knowledge of situations in which harassment may exist should consult the Xavier University Harassment Code and Accountability Procedures (HCAP).

To encourage persons to come forward, the University provides several channels of communication, information, and both informal and formal complaint resolution procedures. Persons or groups who believe they are victims of such an action are encouraged to report the incident to the appropriate University authority. All complaints are considered serious and are handled through the informal or formal complaint resolution procedures as described below. Disciplinary action will be taken in all cases where there is a finding of responsibility through a formal procedure.

This HCAP is only part of Xavier University's effort to prevent harassment in our community. In addition to spelling out steps for making and resolving complaints, the University is also committed to programs of education to raise the level of understanding concerning the nature of harassment and ways to prevent its occurrence.

To the extent any provision of this HCAP conflicts with another Xavier policy or procedure, the language of this HCAP shall take precedent over the other conflicting statement. If a faculty member is found responsible for violating the HCAP through the formal HCAP procedures the recommended sanctions will be applied through the appropriate process outlined in the Faculty Handbook.

## 1.2 Applicability of the HCAP

This HCAP applies to the "University Community" which includes all persons who are enrolled at or employed by Xavier University while they are on campus or are participating in a University-related off- campus activity, except where noted. Additionally, all others present on

the Xavier campus or participating in a University-related off- campus activity are expected to observe the policies outlined herein.

The HCAP applies when an employee (including contracted employees employed by the University) is accused of violating Xavier's harassment policies by a student, employee, contracted employee, or third party (i.e. visitor to campus). An individual is considered an employee for purposes of the HCAP on the first day the individual begins working at Xavier. In addition, Xavier reserves the right to take the steps, under the HCAP and/or other relevant University policy, the University assesses may be necessary and appropriate to respond to conduct of individuals who may not yet have started their first day of employment, but that may be affiliated with the University (e.g., an individual with an offer letter, independent contractor).

The Xavier Student Handbook applies when a student is accused of violating Xavier policy by a student, employee, contractor employed by the University or third party (i.e. visitor to campus).

This HCAP is subject to change as deemed appropriate by the University. Notice of changes to this HCAP will be provided to all persons to whom it applies through the campus portal, email system or by some other method reasonably intended to reach all members of the University Community. The University will strive to provide this notice of changes within a reasonable period of time after the changes have been made.

The official version of this HCAP is located on the Xavier University website. This is a living document, which will be reviewed and updated.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 3 of 80 PAGEID #: 52



Xavier Home (/) > HCAP (../index) > Statement on Harassment

# STATEMENT ON HARASSMENT

# 2.1 Position Statement on Harassment

Xavier is committed to eliminating barriers that impede learning and research development and to establishing and maintaining diverse human relationships essential to living harmoniously in a global society. Xavier is creating and implementing educational and development initiatives through the discovery and transmission of knowledge in order to establish and maintain diverse human relationships essential to living harmoniously in a global society. Therefore, it is essential that members of the University Community function effectively and justly when exposed to ideas, beliefs, values, personal characteristics, and cultures different from their own. Incidents of harassment jeopardize the proper functioning of the Xavier Community and therefore the University takes all claims of harassment seriously.

Xavier community members and third parties who have experienced or are experiencing harassment by a Xavier employee are encouraged to bring them to the attention of Affirmative Action Officer , Office of Human Resources, Alumni Center Room 132, 3800 Victory Parkway, Cincinnati, Ohio 45207-5400, 513-745-3638. For complaints of Sex Discrimination (including Title IX Sexual Harassment (Section 4.2.1) and Interpersonal Violence (Section 4.2.2) Xavier community members and third parties are encouraged to bring them to the attention of Xavier's Title IX and Interpersonal Violence Response Office (hereinafter "Title IX Office"), Gallagher Student Center 332, 3800 Victory Parkway, Cincinnati, Ohio 45207-5400, 513-745-3046.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 4 of 80 PAGEID #: 53



Xavier Home (/) > HCAP (../index) > The HCAP and Related Laws

# THE HCAP AND RELATED LAWS

### 3.1 Title VII of the Civil Rights Act of 1964

This law provides that, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." Xavier University does not discriminate, exclude from participation in, or deny benefits of its educational programs, admission policies, activities, or employment policies and opportunities that would be violative of Title VII. Individuals complaining of any type of discrimination or harassment outlined above are encouraged to bring them to the attention of the University via one of the following resources:

Affirmative Action Officer, Human Resources, Alumni Center, Room 132, 3800 Victory Parkway, Cincinnati, Ohio 45207-5400, 513-745-3638.
For Sex Discrimination complaints, Xavier's Title IX and Interpersonal Violence Response Coordinator, Gallagher Student Center 332, 3800 Victory Parkway, Cincinnati, Ohio 45207-5400, 513-745-3046.
When a student is accused of engaging in discrimination or harassment, the Dean of Students, Gallagher Student Center, Room 302, 3800 Victory Parkway, Cincinnati OH 45207-2120, 513-745-3166.

### 3.2 Title IX of the Education Amendments Act of 1972

This law provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." This includes protection from sexual harassment, sexual violence, domestic violence, dating violence, and stalking as well as discrimination and harassment based on an individual's status as pregnant or parenting. In accordance with Title IX, Xavier University does not discriminate, exclude from participation in, or deny benefits of its educational programs, admission policies, activities, or employment policies and opportunities on the basis of gender. Xavier's Title IX Office monitors compliance with this law and coordinates Xavier's response to complaints of discrimination

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 5 of 80 PAGEID #: 54

based on sex, including assisting reporting parties in receiving any medical, mental health or other services and facilitating any interim protective measures that may be warranted. Inquiries concerning the application of Title IX and Xavier's Title IX policies may be referred to Xavier's Title IX and Interpersonal Violence Response Coordinator (hereinafter "Title IX Coordinator"):

Kate Lawson, Gallagher Student Center Room 332B,
3800 Victory Parkway, Cincinnati, Ohio 45207-2120,
513-745-3046, lawsonk1@xavier.edu

Or

Office of Civil Rights, Cleveland Office,
U.S. Department of Education, 600 Superior Avenue East,
Suite 750, Cleveland, OH 44114-2611,
216-522-4970, OCR.Cleveland@ed.gov (mailto:OCR.Cleveland@ed.gov)

Individuals who have experienced and/or who have knowledge of Title IX Sexual Harassment and Interpersonal Violence will find all Xavier University policies on reporting, Xavier's response, and comprehensive resources for individuals impacted by these issues in this HCAP.

### 3.3 Clery Act

Federal law, known as the Clery Act, mandates reporting and disclosure procedures for higher education institutions. The Clery Act requires every institution to provide the campus community with information necessary to make informed decisions about their health and safety. The Clery Act specifically mandates every institution to do the following:

(1) have emergency notification and evacuation procedures;

(2) issue timely campus alerts for crimes that represent an ongoing threat to the safety of students or employees;

(3) keep a crime and fire log;

(4) collect crime reports from campus security authorities;

(5) request crime statistics from local law enforcement;

(6) submit crime and fire statistics to U.S. Department of Education;

(7) publish an annual security report and fire safety report.

For more information on the Clery Act see 10U.S.C. Section 1092 or
http://www2.ed.gov/admins/lead/safety/handbook.pdf.

- **3.3.1 XU Alert Me**
    - In compliance with the Clery Act, Xavier created the XU Alert Me program to
      increase safety and awareness within the Xavier community. XU Alert Me allows
      Xavier to alert students, faculty, and staff of threats, emergency situations, and
      weather- related closings via text messaging, email, and voice messaging.
    - In order to receive alerts from the XU Alert Me program, students must provide
      Xavier with the phone number and e- mail address through which they wish to
      be contacted. This information can be provided online at
      http://www.xavier.edu/audit-risk/Sign-Up.cfm.
    - Students, faculty and staff enrolled in XU Alert Me will be promptly notified
      upon the confirmation of a significant emergency or dangerous on-campus
      situation involving an immediate threat to the health or safety of students,
      faculty, or staff as determined in Xavier's sole discretion, unless issuing a
      notification will compromise efforts to contain or manage the emergency.
      Individual(s) enrolled in the XU Alert Me program understand that substance and
      timing of alerts will be at Xavier's sole discretion. In the event Xavier decides to
      send an alert, XU Alert Me will send each enrolled individual(s) an e- mail and/or
      text message, and/or will attempt to contact each enrolled individual by phone
      up to three times. The method(s) of contact will depend on the contact
      information provided by the individual at the time of enrollment. Once a call is
      answered by the individual or the individual's automated voice mail, no further
      attempts will be made to contact that individual.
    - Xavier will not charge individual(s) a fee for enrolling in the XU Alert Me
      program, but individual(s) will be responsible for any fees charged by their
      phone/cellular service providers for the associated calls, text messages, or voice
      mails.

### 3.4 Section 504 of the Rehabilitation Act

This law provides that, "No person in the United States shall, on the basis of sex, be excluded
from participation in, be denied the benefits of, or be subjected to discrimination under any
education program or activity receiving Federal financial assistance..." Examples of Sex
Discrimination include, but are not limited to, sexual harassment, sexual assault, dating
violence, domestic violence, stalking, and discriminating against an individual based on her
status as pregnant.

This law provides that, "No otherwise qualified individual with a disability in the United
States...shall, solely by reason of his or her disability, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." Xavier University does not discriminate against qualified individuals with disabilities in its educational programs, admissions policies, activities, or employment opportunities and policies. Individuals complaining of any type of discrimination or harassment outlined above are encouraged to bring them to the attention of the University via one of the following resources:

Affirmative Action Officer, Alumni Center, Room 132,
3800 Victory Parkway, Cincinnati, Ohio 45207-5400,
(513)-745-3638

The Dean of Students, Gallagher Student Center,
Room 302, 3800 Victory Parkway, Cincinnati OH 45207-2120,
(513)-745-3166.

### 3.5 Americans With Disabilities Act of 1990, As Amended

This law recognizes and protects the civil rights of people with disabilities. Disability discrimination includes not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, barring undue hardship. Xavier does not discriminate against qualified individuals with disabilities in the context of employment and public accommodations, if any. Inquiries regarding disability discrimination may be directed to Affirmative Action Officer, Alumni Center Room 132, 3800 Victory Parkway, Cincinnati, Ohio 45207-5400, (513)-745-3638, or the Equal Employment Opportunity Commission 131 M Street, NE Washington DC, 20507, 202-663-4900, 1-(800)-669-4000, http://www.eeoc.gov/.

### 3.6 Violation of Law and University Policy In General

The University reserves the right to initiate or proceed with the HCAP process, regardless of any pending criminal investigation, charges, arrest, or prosecution arising out of the same or a related factual situation. At the discretion of the Affirmative Action Officer, or designee (with respect to faculty, staff and administrators) or the Dean of Students, or designee (with respect to students), and in consultation with the Title IX Coordinator in matters involving Sex Discrimination, the HCAP process may be carried out prior to, simultaneously with, or following any related criminal matter.

The dismissal, failure to prosecute, "no bill" from a grand jury, settlement or reduction in charges of any related criminal matter shall not be grounds for a challenge to any HCAP

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 8 of 80 PAGEID #: 57

matter.

For additional information related to HCAP matters that are also Student Conduct matters, see the Student Handbook at Section 1.1.5.

### 3.7 University Response to Police Citations Issued to Members of the University Community

The HCAP process may also be instituted by Xavier when information is received from the Xavier University Police Department, the Cincinnati Police Department, the Norwood Police Department, or other police entities, about misdemeanor or criminal citations that have been issued to a member of the University Community.

### 3.8 Independent Legal Counsel

While the role of an attorney throughout the HCAP process is limited by the terms of this HCAP, individuals involved in HCAP matters that may also be criminal matters are encouraged to seek legal counsel. The Cincinnati Bar Association has a referral service and can be contacted at 513-381-8359 or further information can be found at http://www.cincybar.org/news-resources/find-lawyer/index.

In matters involving complaints of Sex Discrimination, the Complainant and Respondent may have an advisor of their choice (including an attorney) in any related meeting or hearing. Additional information on the role of the advisor of choice in Title IX Sexual Harassment matters may be found at Section 4.7.1.4.5 Title IX Sexual Harassment Hearing Procedures and in Interpersonal Violence matters, Section 5.9.7. Harassment Panel Hearing Procedures.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.1 Nature of Prohibited Conduct

# 4.1 NATURE OF PROHIBITED CONDUCT

### 4.1.1 Definition of Harassment at Xavier University

- For the purposes of this policy, harassment is the creation of a hostile or intimidating environment, in which conduct, because of its severity and/or persistence, is likely to interfere significantly with an individual's life by affecting the person physically or emotionally. Such harassment will not be tolerated.
- Harassment can be uninvited or unwelcome verbal, physical or visual conduct. Harassing conduct is often, but not always, in reference to the individual's or a group of individuals' sex, gender identity, race, color, economic status, class, religion, culture, national origin, citizenship, veteran status, ethnicity, sexual orientation, position, age, handicap, or disability.
- Verbal conduct may be either oral or written words, such as epithets. Physical conduct may include assault or battery, physically interfering with, blocking or impeding an individual's normal movement. Visual conduct may include drawings, pictures, cartoons or derogatory posters. (None of these descriptions is intended to describe all manners of the particular type of conduct.)
- Examples of harassing conduct include, but are not limited to:
  - Any intentional, willful or malicious abuse, mocking, or disparaging of a person or persons so as to affect their educational performance or living or working environment at Xavier.
  - Actions or expressions that might cause or contribute to violent situations, or that create a clear and present danger of violent situations.
  - Phone calls, Instant Messenger sessions or other electronic communications that violate the Ohio Telecommunications Harassment Statute, O.R.C. §2917.21
  - Acts of violence, stalking, unwelcome physical touch, physical, verbal or written threats, and/or other inappropriate communications.
  - Incidents of Sex Discrimination, as defined below.
- Individuals of any sex, sexual orientation, and/or gender identity may be the victim of and engage in harassment. The conduct alleged to constitute harassment under this policy is evaluated from the perspective of a reasonable person similarly situated to the Complainant and considering all the circumstances.

### 4.1.2 Duty to Report Harassment Not Sex Discrimination

- To assist Xavier in preventing harassment, all members of the University Community are encouraged to report all incidents of harassment which they witness or which are known to them.
- Any member of the University Community who witnesses harassment or is made aware of a harassment situation is encouraged to urge the Complainant to report the harassment situation to Xavier's Affirmative Action Officer for further advice or action.
- Any member who has any knowledge of conduct that could be in violation of this policy is encouraged to report such information to the Affirmative Action Officer or another University official.
- Vice presidents, deans, department chairs, administrators, managers, and supervisors of the University have a duty to report incidents of harassment as follows: (1) to promptly report to the Affirmative Action Officer any conduct he or she observes that he or she believes constitutes harassment in violation of this HCAP; and (2) to promptly inform the Affirmative Action Officer of any report of, complaint of, or request for assistance with a harassment situation. These duties may apply even when the intention is to resolve the situation through informal procedures.
- The Affirmative Action Officer will promptly, upon the filing of a complaint alleging harassment by a Xavier student, report such filing and related information to the Dean of Students. The Affirmative Action Officer may report to the Dean of Students any other information regarding a potentially harassing situation involving a Xavier student, only with the consent of the person alleging the harassment.
- Anyone who perceives an imminently dangerous situation should immediately report the situation to the Campus Police.

### 4.1.3 Confidentiality of Harassment Complaints

- Nothing provided herein is intended to restrict the ability of any party from discussing or disclosing information to others or gathering evidence that is necessary within the parameters of preparation for and participation in the complaint resolution process. However, because of the sensitive and private nature of these matters, all persons involved any aspect of an allegation of Sex Discrimination should respect the privacy of the parties involved and keep the matter confidential within the parameters of preparation for and participation in the complaint resolution process unless otherwise required by law. All communication by parties and witnesses should be respectful and comply with this HCAP. Information will only be disclosed to the extent required by law, and to the extent that such disclosure is necessary and permitted under this HCAP for the investigation and adjudication of any claim of Sex Discrimination. Failure of any individual to maintain these parameters may result in disciplinary action in accord with the applicable University policies and procedures.

- Failure of any individual to maintain this confidentiality may result in disciplinary action in accord with the applicable University procedures (Student Handbook, Xavier University Faculty Handbook, or University's Policy and Procedures.)
- Any Respondent identified in a complaint that has been filed may, at his or her option, inform his or her supervisor or academic advisor that such a complaint has been filed.
- See Section 4.4.1 Confidentiality of Sex Discrimination Reports for a full description of policies and procedures that apply when a complaint concerns these issues.
- For reports concerning matters that do not involve Sex Discrimination, if a Complainant requests that their identity not be disclosed, the University representative shall honor the request to the extent it is possible so long as the informal resolution procedures apply. However, once formal procedures are pursued, the Complainant's identity must be disclosed to the Respondent. In any event of disclosure of the Complainant's identity where the Complainant has sought anonymity, the Complainant shall be notified in advance of the disclosure.
- A complaint alleging an intentional breach of confidentiality may be pursued using the steps followed for a complaint of harassment. Such a breach may also constitute an act of retaliation. A breach of confidentiality may be grounds to amend or void the outcome of any previously agreed-upon resolution to a complaint.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.2 Sex Discrimination at Xavier University

# 4.2 SEX DISCRIMINATION AT XAVIER UNIVERSITY

For the purposes of this HCAP, Sex Discrimination includes the following:

- **Conduct that violates Xavier's Title IX Sexual Harassment policies (Section 4.2.1) (421-prohibited-title-ix-sexual-harassment)**
- **Conduct that violates Xavier's Interpersonal Violence policies (Section 4.2.2) (422-prohibited-interpersonal-violence)**

If the report received contains allegations of more than one type of prohibited Sex Discrimination and the Title IX Office assesses one or more of those allegations fall under Xavier's Title IX Sexual Harassment and one or more fall under Xavier's Interpersonal Violence policies:

- The relevant policy definitions of Section 4.2.1 Title IX Sexual Harassment will apply to allegations assessed to fall under Xavier's Title IX Sexual Harassment policies;
- The relevant policy definitions of Section 4.2.2 will apply to allegations assessed to fall under Xavier's Interpersonal Violence policies; and
- The response and complaint resolution process procedures of Section 4.7.1 Title IX Sexual Harassment Response and Complaint Resolution Process will apply to all allegations.

The University issues this statement of policy to inform the community of our comprehensive plan addressing Sex Discrimination when reported to a University official, and reaffirms its commitment to maintain a campus environment emphasizing the dignity and worth of all members of the university community.

This information applies to reports of conduct that may constitute prohibited Title IX Sexual Harassment as well as conduct that may constitute prohibited Interpersonal Violence, which described conduct that falls outside of Title IX Sexual Harassment, but is still prohibited and will be addressed by the University.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 13 of 80 PAGEID #: 62

Xavier University defines the forms of Sex Discrimination it prohibits in this HCAP and the Student Handbook. Many of these forms of Sex Discrimination are also violations of Ohio criminal and/or civil law. Below are Xavier's definitions and policies, followed by Ohio legal definitions. The criminal and civil law list here is not intended to be exhaustive and this material should not be relied upon as legal advice or guidance regarding these offenses. In addition, the types of misconduct prohibited by this HCAP may be broader than state law and some prohibited conduct may not rise to the level of violating criminal or civil law. Xavier strives to ensure that its policies are followed and initiate the procedures outlined to address alleged misconduct regardless of whether a police report is filed about that misconduct and/or whether a criminal investigation is pursued. For complete information of state law, please see the Ohio Revised Code at http://codes.ohio.gov/orc/.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.2 Sex Discrimination (index) > 4.2.1 Prohibited Title IX Sexual Harassment

# 4.2.1 PROHIBITED TITLE IX SEXUAL HARASSMENT

Title IX defines Sexual Harassment as conduct on the basis of sex that satisfies one or more of the following:

1. An employee of Xavier University conditioning the provision of an aid, benefit, or service of Xavier on an individual's participation in unwelcome sexual conduct
2. Unwelcome conduct that would be determined by a reasonable person to be so severe, pervasive, and objectively offensive that is effectively denies a person equal access to a Xavier education program or activity; or
3. **Sexual Assault** is defined as:
    i. **Sex Offenses, Forcible**: Any sexual act directed against another person, without the consent of the complainant, including instances in which the complainant is incapable of giving consent because of incapacitation.
    ii. **Forcible Rape**: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the complainant.
    iii. **Forcible Sodomy**: Oral or anal sexual intercourse with another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.
    iv. **Sexual Assault with an Object**: The use of an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.
    v. **Forcible Fondling**: The touching of the private body parts of another person (buttocks, groin, breasts), for the purpose of sexual gratification, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 15 of 80 PAGEID #: 64

  vi. **Sex Offenses, Non-forcible**:

    1. **Incest**: Non-forcible sexual intercourse, between persons who are related to each other, within the degrees wherein marriage is prohibited by Ohio law.

    2. **Statutory Rape:** Non-forcible sexual intercourse, with a person who is under the statutory age of consent of 16.

4. **Dating Violence** is defined as:

  i. Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

    1. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

  ii. Including, but not limited to, sexual or physical abuse or the threat of such abuse.

  iii. Does not include acts covered under the definition of domestic violence.

5. **Domestic Violence** is defined as a felony or misdemeanor crime of violence committed:

  i. by a current or former spouse or intimate partner of the victim

  ii. by a person with whom the victim shares a child in common

  iii. by a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner

  iv. by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred

  v. by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

6. **Stalking** is defined as engaging in a course of conduct directed at a specific person that would cause a reasonable person to

  i. fear for the person's safety or the safety of others; or

  ii. suffer substantial emotional distress.

In accord with Federal law and regulations, conduct can only be considered Sexual Harassment under Title IX if:

- The conduct occurred in a Xavier University educational program or activity and
- Against a person in the United States

Under Title IX, a covered education program or activity includes locations, events, or circumstances over which Xavier exercised substantial control over both the Respondent and the context in which the sexual harassment occurs. The Title IX and Interpersonal Violence

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 16 of 80 PAGEID #: 65

Response Coordinator is responsible for assessing whether the education program or activity of the reported conduct is covered by Title IX.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.2 Sex Discrimination (index) > 4.2.1 Prohibited Title IX Sexual Harassment

# 4.2.1 PROHIBITED TITLE IX SEXUAL HARASSMENT

Title IX defines Sexual Harassment as conduct on the basis of sex that satisfies one or more of the following:

1. An employee of Xavier University conditioning the provision of an aid, benefit, or service of Xavier on an individual's participation in unwelcome sexual conduct
2. Unwelcome conduct that would be determined by a reasonable person to be so severe, pervasive, and objectively offensive that is effectively denies a person equal access to a Xavier education program or activity; or
3. **Sexual Assault** is defined as:
    i. **Sex Offenses, Forcible**: Any sexual act directed against another person, without the consent of the complainant, including instances in which the complainant is incapable of giving consent because of incapacitation.
    ii. **Forcible Rape**: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the complainant.
    iii. **Forcible Sodomy**: Oral or anal sexual intercourse with another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.
    iv. **Sexual Assault with an Object**: The use of an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.
    v. **Forcible Fondling**: The touching of the private body parts of another person (buttocks, groin, breasts), for the purpose of sexual gratification, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.

     vi. **Sex Offenses, Non-forcible**:

          1. **Incest**: Non-forcible sexual intercourse, between persons who are related to each other, within the degrees wherein marriage is prohibited by Ohio law.
          2. **Statutory Rape:** Non-forcible sexual intercourse, with a person who is under the statutory age of consent of 16.

4. **Dating Violence** is defined as:

     i. Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

          1. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

     ii. Including, but not limited to, sexual or physical abuse or the threat of such abuse.
     iii. Does not include acts covered under the definition of domestic violence.

5. **Domestic Violence** is defined as a felony or misdemeanor crime of violence committed:

     i. by a current or former spouse or intimate partner of the victim
     ii. by a person with whom the victim shares a child in common
     iii. by a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner
     iv. by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred
     v. by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

6. **Stalking** is defined as engaging in a course of conduct directed at a specific person that would cause a reasonable person to

     i. fear for the person's safety or the safety of others; or
     ii. suffer substantial emotional distress.

In accord with Federal law and regulations, conduct can only be considered Sexual Harassment under Title IX if:

- The conduct occurred in a Xavier University educational program or activity and
- Against a person in the United States

Under Title IX, a covered education program or activity includes locations, events, or circumstances over which Xavier exercised substantial control over both the Respondent and the context in which the sexual harassment occurs. The Title IX and Interpersonal Violence

Response Coordinator is responsible for assessing whether the education program or activity of the reported conduct is covered by Title IX.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.2 Sex Discrimination (index) > 4.2.2 Prohibited Interpersonal Violence

# 4.2.2 PROHIBITED INTERPERSONAL VIOLENCE

Interpersonal Violence is a broad term encompassing any unwelcome act of a sexual, intimate, and/or romantic nature perpetrated by any person against another without that person's Consent or when that person is unable to freely give Consent or is Coerced. Interpersonal Violence occurs regardless of whether there was intent to harm another. While Interpersonal Violence is similar in many respects to Title IX Sexual Harassment described in Section 4.2.1 above, this Section 4.2.2 addresses conduct that is not within the confines of Title IX Sexual Harassment, such as, but not limited to, conduct of a student that occurs off-campus.

Interpersonal Violence can involve physical, verbal, and/or electronic contact or conduct (e.g., offensive sexual words, comments, gestures, videos or pictures). It can occur between people of different genders or people of the same gender, or between an individual and a community of people. It can occur before or after consensual sexual activity.

Retaliation by any University employee against a person complaining of Interpersonal Violence is prohibited.

The following types of Interpersonal Violence are prohibited by the Xavier University's HCAP and Student Handbook.

- **4.2.2.1 Sexual Harassment is: Unwelcome, gender-based verbal or physical conduct that is:**
  - Sufficiently severe, persistent or pervasive that it unreasonably interferes with, denies or limits someone's ability to participate in or benefit from the University's educational programs, services, and/or activities, and is based on power differentials (quid pro quo), the creation of a hostile environment, or retaliation.
  - Quid pro quo sexual harassment exists when there are:
    - Unwelcome sexual advances, request for sexual favors, or other verbal or physical conduct of a sexual nature; and

- - Submission to or rejection of such conduct results in adverse educational or employment action.
  - Retaliatory harassment is any adverse employment or educational action take because of the individual's participation in an investigation or resolution of a Sex Discrimination complaint.
  - Hostile environment sexual harassment. Determining whether the conduct has created a hostile environment requires an assessment of whether the conduct is sufficiently serious to deny or limit the individual's ability to participate in or benefit from the University program. To determine whether the conduct denies or limits benefits or services, the following will be considered:
    - The conduct from subjective and objective perspectives;
    - Whether the conduct is sufficiently severe or serious;
    - Effect of the conduct on the individual's education and/or employment;
    - All other relevant circumstances, such as type, frequency, location, duration, number of individuals involved, and the relationship/roles of the parties.
  - Behavior is sexual in nature if a reasonable person could have interpreted the alleged behavior to be sexual. Conduct that constitutes sexual harassment can be verbal, visual or physical and may be through telephone or electronic contact.
  - Not all workplace or educational conduct that may be described as "harassment" affects the terms, conditions or privileges of employment or education. For example, a mere utterance of a gender-based epithet which creates offensive feelings in an employee or student would not normally affect the terms or conditions of their employment or education.
  - Examples of sexual harassment may include:

- Unwelcome sexual advances.
- Explicit or implicit requests for sexual favors.
- Ongoing use of offensive language or discussions of a sexual nature that creates a hostile or offensive environment.
- A supervisor or professor promising a raise or a better grade in exchange for sexual contact.
- Repeated, unwanted attempts to change a professional relationship to a personal relationship.
- Repeated joking, teasing, and/or comments about sexual orientation.
- Repeated joking, teasing, and/or comments about gender identity.
- Repeated joking, teasing, and/or comments about other peoples' bodies.
- Whistling, touching, or other repeated unwanted flirtation.
- Displaying graphic pictures that create a hostile or offensive working or living environment.

- Unwelcome attention of a sexual nature after requesting that the attention be stopped.
- Sexual Assault, Rape, Stalking, Domestic Violence, Dating Violence, Public Indecency, Sexual Exploitation, and Other Interpersonal Violence (as defined in this policy.)
- The foregoing is not an exhaustive list of conduct that constitutes Sexual Harassment.

  - The more severe the conduct the less the need to show repeated incidents.
  - There does not need to be sexual desire motivating the conduct. The key inquiry is whether the Respondent's words or actions are directed at an individual because of the individual's sex, sexual orientation, and/or gender identity. This includes harassment based on failure to conform to stereotypical notions of sex and gender, including non-conforming appearance and non-conforming mannerisms.

**4.2.2.2 Public Indecency**- Masturbating or flashing/exposing breasts or genitals to others in a public and/or uninvited manner. It also includes engaging in an activity in public appearing to an ordinary observer to be sexual conduct or masturbation.

**4.2.2.3 Stalking**- A pattern of conduct by a person with a sexual, romantic or gender-based motivation that causes or is intended to cause another person to believe that the offender will cause physical harm or mental distress to the other.

**4.2.2.4 Sexual Exploitation**- Occurs when one person takes non-consensual or abusive sexual advantage of another for their own advantage or benefit, or to benefit or advantage anyone other than the one being exploited, and that behavior does not otherwise constitute one of other Interpersonal Violence offenses. Examples of sexual exploitation include, but are not limited to:

- Invasion of sexual privacy;
- Prostituting another person;
- Non-consensual digital, video or audio recording of nudity or sexual activity;
- Unauthorized sharing or distribution of digital, video or audio recording of nudity or sexual activity;
- Engaging in voyeurism (trespassing, secretly invading the privacy of another, spying or eavesdropping upon another, usually with the purpose of sexually arousing or gratifying oneself (e.g., watching a person or persons in an intimate setting without that person's permission). Voyeurism may involve telescopes, still and video cameras, audio recording, or other technologies)
- Going beyond the boundaries of consent (such as letting your friend hide in the closet to watch you having consensual sex);
- Knowingly exposing someone to or transmitting an STI, STD or HIV to another person;
- Intentionally or recklessly exposing one's genitals in non-consensual circumstances; inducing another to expose their genitals;

• Sexually-based stalking and/or bullying may also be forms of sexual exploitation

### 4.2.2.4 Sexual Assault (or attempts to commit the same)

Sexual Assault is:

• Any intentional sexual touching, however slight,
• By a person upon another person,
• That is without Consent and/or when Coercion is used.

Sexual Contact includes:

• Intentional contact with the breasts, buttock, groin, or genitals, or
• Touching another of with any of these body parts or
• Making another touch you or themselves with or on any of these body parts or
• Any other intentional bodily contact in a sexual manner.

### 4.2.2.5 Rape (or attempts to commit same)

Rape is:

• Any sexual intercourse, however slight,
• With any body part or object,
• By a person upon another person,
• That is without Consent and/or when Coercion is used.

Intercourse includes:

• Vaginal or anal penetration by body part or object Oral (mouth to genital or anal)
• No matter how slight the penetration or contact.

### 4.2.2.6 Domestic Violence is defined as:

• A pattern of abusive behavior in an intimate or family relationship where
• The behavior is used to exert power and control over another party in the relationship.

OR

• One instance of severe abusive behavior in an intimate or family relationship where
• The behavior is used to exert power and control over another party in the relationship.

Domestic violence can include but is not limited to physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person.

Abusive behavior can be spoken, written, or physical. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone.

Individuals of all sexes and gender identities can perpetrate domestic violence and can be victims of domestic violence. Domestic violence can be perpetrated by and against individuals who identify as heterosexual, lesbian, gay, bisexual, and/or transgender, and crosses all social, ethnic, racial, age, and economic lines.

**4.2.2.7 Dating Violence** is defined as:

- A pattern of abusive behavior committed by a person who is or has been in a relationship of a romantic or intimate nature with the victim where
- The behavior is used to exert power and control over another party in the relationship.

OR

- One instance of severe abusive behavior committed by a person who is or has been in a relationship of a romantic or intimate nature with the victim where
- The behavior is used to exert power and control over another party in the relationship.

Dating violence can include but is not limited to physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person.

Abusive behavior can be spoken, written, or physical. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone.

Individuals of all sexes and gender identities can perpetrate domestic violence and can be victims of domestic violence. Domestic violence can be perpetrated by and against individuals who identify as heterosexual, lesbian, gay, bisexual, and/or transgender, and crosses all social, ethnic, racial, age, and economic lines.

**4.2.2.8 Interpersonal Violence- Other** – An employee may be found responsible for "Interpersonal Violence - Other" if their actions meet the definition of this type of misconduct but do not meet the definition of any particular type of Interpersonal Violence listed in this section.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.2 Sex Discrimination (index) > 4.2.3 Important Definitions for Understanding Title IX Sexual Harassment and Interpersonal Violence

# 4.2.3 IMPORTANT DEFINITIONS FOR UNDERSTANDING TITLE IX SEXUAL HARASSMENT AND INTERPERSONAL VIOLENCE

**4.2.3.1 "Coercion" or "Coerced"** means:

- Compelling another person to do something through:
  - Emotional or physical pressure or
  - Threats or other forms of intimidation.

Real or perceived power differentials between individuals also may create an atmosphere of Coercion that can significantly impair a person's ability to Consent.

**4.2.3.2 "Consent"** means:

- Clear, knowing and voluntary words or actions that demonstrate agreement for specific sexual activity. Consent must be informed and freely given.

Consent is invalidated when it is forced, Coerced, or when a person is physically and/or mentally incapable of giving Consent. For example, a person who is sleeping or a person who is substantially impaired by drugs or alcohol may not be able to Consent. Some signs of substantial impairment may include, but are not limited to, loss of balance/inability to walk without stumbling, slurred speech, inability to focus their vision, vomiting, erratic or extreme behavior, knowledge of person's significant use of drugs or alcohol, or passing out.

Consent is an active, on-going process. It can be withdrawn at any time, and Consent for one sexual act does not imply Consent for another subsequent sexual act. Consent, a lack of Consent or a withdrawal of Consent can be expressed by words, actions, or both. For example, verbal silence or the absence of physical resistance does not automatically mean someone has consented to a sexual activity; nor is physical resistance required for a person to verbally communicate a lack of Consent or to withdraw Consent.

In reviewing an allegation of sexual misconduct, Consent is a critical factor in determining whether there is a violation of this policy. Although all parties must give their Consent to any sexual act and it is the best practice for both partners to be responsible for confirming that they have obtained the other's Consent; it is the responsibility of the person initiating the sexual activity to obtain Consent from the other.

Title IX Sexual Harassment or Interpersonal Violence Hearing Panels (Sections 4.7.1.4.3 and 5.9.7. Harassment Panel Hearing Procedures) may examine the issue of Consent from a variety of perspectives, including whether the Respondent believed he or she had obtained Consent and whether a reasonable person would have believed that he or she had obtained Consent. Although neither perspective is outcome- determinative for every case, individuals are strongly advised to be mindful of and conduct themselves according to the reasonable person standard and to avoid any ambiguity in obtaining and giving Consent. Respondent's use of alcohol or other drugs will not function to excuse any behavior that violates this policy.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.2 Sex Discrimination (index) > 4.2.4 Applicable Federal, State, and Local Laws

# 4.2.4 APPLICABLE FEDERAL, STATE, AND LOCAL LAWS

Xavier's HCAP Sections 4.2.1 and 4.2.2 provides definitions of Title IX Sexual Harassment and Interpersonal Violence prohibited by the University. Ohio has separate and distinct criminal definitions of these types of conduct as does the federal Violence Against Women Act (VAWA) and the US Code. The Ohio criminal law definitions are not the same definitions used Xavier's HCAP. Xavier's Clery Compliance Officer must utilize the VAWA and US Code definitions to help classify crimes for Clery crime counting and reporting purposes only.

Students and employees have the right to report behavior to both the University and request a response under the University's internal policies, and to law enforcement to request a response under the criminal law. The definitions below are taken from applicable federal and state criminal law.

### 4.2.4.1 Consent

Consent is defined in Ohio state criminal statutes and provides that no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. No person may substantially impair another person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception for the purposes of preventing resistance to sexual conduct. No person may engage in sexual conduct with another person whose ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

### 4.2.4.2 Sex Offenses General Definitions (ORC 2907.01)

As used in sections 2907.01 to 2907.38 of the Revised Code:

• "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse,

fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

- "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
- "Sexual activity" means sexual conduct or sexual contact, or both.
- "Prostitute" means a male or female who promiscuously engages in sexual activity for hire, regardless of whether the hire is paid to the prostitute or to another.
- "Harmful to juveniles" means that quality of any material or performance describing or representing nudity, sexual conduct, sexual excitement, or sado-masochistic abuse in any form to which all of the following apply:
  (1) The material or performance, when considered as a whole, appeals to the prurient interest of juveniles in sex;
  (2) The material or performance is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for juveniles;
  (3) The material or performance, when considered as a whole, lacks serious literary, artistic, political, and scientific value for juveniles.
- When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is "obscene" if any of the following apply:
  (1) Its dominant appeal is to prurient interest;
  (2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;
  (3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;
  (4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;
  (5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

- "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal
- "Nudity" means the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state.
- "Juvenile" means an unmarried person under the age of eighteen.
- "Material" means any book, magazine, newspaper, pamphlet, poster, print, picture, figure, image, description, motion picture film, phonographic record, or tape, or other tangible thing capable of arousing interest through sight, sound, or touch and includes an image or text appearing on a computer monitor, television screen, liquid crystal display, or similar display device or an image or text recorded on a computer hard disk, computer floppy disk, compact disk, magnetic tape, or similar data storage device.
- "Performance" means any motion picture, preview, trailer, play, show, skit, dance, or other exhibition performed before an audience.
- "Spouse" means a person married to an offender at the time of an alleged offense, except that such person shall not be considered the spouse when any of the following apply:
  (1) When the parties have entered into a written separation agreement authorized by section 3103.06 of the Revised Code;
  (2) During the pendency of an action between the parties for annulment, divorce, dissolution of marriage, or legal separation;
  (3) In the case of an action for legal separation, after the effective date of the judgment for legal separation.
- "Minor" means a person under the age of eighteen.
- "Mental health client or patient" has the same meaning as in section 2305.51 of the Revised Code.
- "Mental health professional" has the same meaning as in section 2305.115 of the Revised Code.
- "Sado-masochistic abuse" means flagellation or torture by or upon a person or the condition of being fettered, bound, or otherwise physically restrained.

### 4.2.4.3 Rape (ORC 2907.02)

- No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(1) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(2) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(3) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

- No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

### 4.2.4.4 Sexual Battery (ORC 2907.03)

- No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

  (1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

  (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

  (3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

  (4) The offender knows that the other person submits because the other person mistakenly identifies the offender as the other person's spouse.

  (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

  (6) The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person.

  (7) The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school.

  (8) The other person is a minor, the offender is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the other person is enrolled in or attends that institution.

  (9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.

  (10) The offender is a mental health professional, the other person is a mental health client or patient of the offender and the offender induces the other person to submit

by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes.

(11) The other person is confined in a detention facility, and the offender is an employee of that detention facility.

(12) The other person is a minor, the offender is a cleric, and the other person is a member of, or attends, the church or congregation served by the cleric.

(13) The other person is a minor, the offender is a peace officer, and the offender is more than two years older than the other person.

### 4.2.4.5 Unlawful Sexual Conduct with a Minor (ORC 2907.04)

- No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

### 4.2.4.6 Gross Sexual Imposition (ORC 2907.05)

- No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

(2) For the purpose of preventing resistance, the offender substantially impairs the judgment or control of the other person or of one of the other persons by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(3) The offender knows that the judgment or control of the other person or of one of the other persons is substantially impaired as a result of the influence of any drug or intoxicant administered to the other person with the other person's consent for the purpose of any kind of medical or dental examination, treatment, or surgery.

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

- No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 32 of 80 PAGEID #: 81

offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

### 4.2.4.7 Sexual Imposition (ORC 2907.06)

- No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
(2) The offender knows that the other person's or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.
(3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.
(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.
(5) The offender is a mental health professional, the other person or one of the other persons is a mental health client or patient of the offender, and the offender induces the other person who is the client or patient to submit by falsely representing to the other person who is the client or patient that the sexual contact is necessary for mental health treatment purposes.

### 4.2.4.8 Domestic Violence (ORC 2919.25 Criminal)

1. No person shall knowingly cause or attempt to cause physical harm to a family or household member.
2. No person shall recklessly cause serious physical harm to a family or household member.
3. No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

Ohio has a different definition of Domestic Violence applied in civil legal contexts (also separate from Xavier's HCAP policies):

Domestic violence definitions - hearings (Civil)
As used in this section: "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

1. Attempting to cause or recklessly causing bodily injury;

2. Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
3. Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;
4. Committing a sexually oriented offense.

### 4.2.4.9 Dating Violence

Dating violence is not specifically defined in Ohio state criminal statutes; however, Dating Violence is one form of prohibited Title IX Sexual Harassment (Section 4.2.1) as well as one form of Interpersonal Violence (Section 4.2.2) prohibited by Xavier. The definition that must be utilized for Clery purposes is below at Section 4.2.4.1.2.

### 4.2.4.10 Menacing by Stalking (ORC 2903.211)

(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
(2) No person, through the use of any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, or computer system, shall post a message with purpose to urge or incite another to commit a violation of division (A) (1) of this section.
(3) No person, with a sexual motivation, shall violate division (A) (1) or (2) of this section.

### 4.2.4.11 Felonious Assault (OCR 2903.11)

No person shall knowingly do either of the following:
(1) Cause serious physical harm to another or to another's unborn;
(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
• No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly do any of the following:
• Engage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct;
• Engage in sexual conduct with a person whom the offender knows or has reasonable cause to believe lacks the mental capacity to appreciate the significance of the knowledge that the offender has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome;
• Engage in sexual conduct with a person under eighteen years of age who is not the spouse of the offender.

## 4.2.4.12 Violence Against Women Act and the US Code Definitions

The following definitions are taken from the Violence Against Women Act and the US Code are the definitions used by Xavier's Clery Compliance Officer to classify crimes for counting purposes.

**Sexual Assault**: "Sexual assault" means an offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's Uniform Crime Reporting system. A sex offense is any act directed against another person, without the consent of the victim, including instances where the victim if incapable of giving consent, and includes:

- Rape: penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.
- Fondling: the touching of the private parts of another person for the purposes of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental incapacity.
- Incest: non-forcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.
- Statutory Rape: a non-forcible sexual intercourse with a person who is under the statutory age of consent.

**Domestic Violence:**

1) Felony or misdemeanor crimes of violence committed

- By a current or former spouse or intimate partner of the victim;
- By a person with whom the victim shares a child in common;
- By a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner;
- By a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; or
- By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

2) For the purposes of complying with the requirements of this section and section 668.41, any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

**Dating Violence:** The term "dating violence" means violence committed by a person:

1) Who is or has been in a social relationship of a romantic or intimate nature with the victim and

2) The existence of such a relationship shall be based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

For the purposes of this definition-

- Dating Violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse.
- Dating Violence does not include acts covered under the definition of domestic violence.

For the purposes of complying with the requirements of this section and section 668.41, any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

**Stalking**: The term "stalking" means:

1) Engaging in a course of conduct directed at a specific person that would cause a reasonable person to

- fear for the person's safety or the safety of others; or
- Suffer substantial emotional distress.

2) For the purposes of this definition

- Course of conduct means two or more acts, including, but not limited to, acts which the stalker directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, or interferes with a person's property.
- Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.
- Reasonable persons means a reasonable person under similar circumstances and with similar identities to the victim.

3) For the purposes of complying with the requirements of this section and section 668.41, any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 36 of 80 PAGEID #: 85



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.3 Duty to Report Sex Discrimination

# 4.3 DUTY TO REPORT SEX DISCRIMINATION

All Xavier employees (including certain identified student employees) who have knowledge of potential Sex Discrimination (including conduct that may constitute Title IX Sexual Harassment and Interpersonal Violence) experienced and/or reported by a student, staff, faculty, administrator or visitor must report all information learned to the Title IX Office so that it can respond promptly and in compliance with all federal, state, and other applicable law. Confidential resources on campus that are not required to report to the Title IX Office include Xavier's Campus Advocacy Coordinator, mental health counselors, physicians, and nurses at Xavier's Health and Counseling Services, mental health counselors at the Psychological Services Center, and clergy functioning in the role of a pastoral counselor.

Xavier employees are trained on (1) identifying what constitutes Sex Discrimination (2) Xavier's policies addressing Sex Discrimination (3) the role of Xavier's Title IX Office (4) their obligation to report knowledge of Sex Discrimination (5) conduct procedures and the consequences for violating Xavier's policies and standards (6) informing individuals about how to report Sex Discrimination and (7) sharing on and off-campus confidential and non-confidential resources for individuals experiencing Sex Discrimination.

Anyone who perceives an imminently dangerous situation should immediately report the situation to the Campus Police.

Once the Title IX Office is on notice of a potential Sex Discrimination complaint, in consultation with the Complainant regarding their wishes, it will conduct an investigation and facilitate Xavier's Sex Discrimination complaint resolution process.

### 4.3.1 Procedures if the Complainant or Respondent is a Minor:

If an employee of Xavier University, who is required to report Sex Discrimination, in their professional capacity, receives information regarding a **Xavier student who is a minor or a non-Xavier individual who is a minor** (such as a middle school student attending a day camp at the University) experiencing Sex Discrimination (whether by a non-Xavier or a Xavier individual), the employee will follow University protocol to report that information to the

Title IX Office immediately. If the employee is a mandatory reporter under **Ohio Revised Code (ORC) 2151.421** and the reported behavior appears to meet ORC 2151.421(a), the employee will follow the applicable law and policies to file a report with the appropriate state child protective services agency. If the employee does not qualify as a mandatory reporter under ORC 2151.421, Title IX Office staff (who do qualify as mandatory reporters) will file that report.

ORC 2151.421(a) provides in part: "No person described…in this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age, or a person under twenty-one years of age with a developmental disability or physical impairment, has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division."

In addition, upon receiving the information from the employee, the Title IX Office will provide comprehensive information to the minor on their rights, options, and resources related to all reporting systems (e.g. Title IX Office, law enforcement). The Title IX Office will also provide information on mandatory reporter responsibilities, medical and safety services, and confidential advocacy and support services.

If the individual alleged to have engaged in the sex discrimination is a Xavier student or employee, the Title IX Office will follow all policies and protocols described in Xavier's Sex Discrimination policies in the Xavier Student Handbook if the respondent is a student; and, the Harassment Code & Accountability Procedures (HCAP) if the respondent is an employee. If the minor requests that the Title IX Office do so and/or if the Title IX Office assesses there are ongoing, urgent safety or medical issues, the Title IX Office will notify the Xavier University Police Department.

If the impacted individual is a **Xavier student who is a minor**, all of the same steps above will be followed. In addition, the Title IX Office will inform the student of their privacy rights under the Family Educational Rights and Privacy Act (FERPA). The Title IX Office will prioritize sharing information only with individuals for whom the student provides a written release, but will discuss with the minor the type of emergency circumstances (such as those with ongoing, urgent safety and medical issues) that may result in the Office needing to share information with the minor's parent(s)/guardian(s) and may, in such emergency situations, notify parents/guardians without the minor's consent.

If an employee of Xavier University receives information regarding a **Xavier student who is a minor engaging in Sex Discrimination**, the employee will follow University protocol to report that information to the Title IX Office immediately. If the employee is a mandatory reporter under **ORC 2151.421,** the reported behavior appears to meet ORC 2151.421(a), and the employee has identifying information regarding the individual impacted by the conduct and that individual is a minor, the employee will follow the applicable law and policies to file a report with the appropriate state child protective services agency. If the employee does not qualify as a mandatory reporter under ORC 2151.421, Title IX Office staff will file that report.

If the individual alleged to have engaged in Sex Discrimination is a member of the University community, the Title IX Office will respond to the alleged conduct by following all policies and protocols described in Xavier's Sex Discrimination policies in the Xavier Student Handbook if the respondent is a student and the HCAP if the respondent is an employee. The Title IX Office will inform the student of their privacy rights under FERPA and will discuss the University's policy to inform the minor student's parent(s)/guardian(s) of the reported information. If the Title IX Office assesses there are ongoing, urgent safety or medical issues related to the report, the office will notify the Xavier University Police Department.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.4 Reporting Sex Discrimination at Xavier University

# 4.4 REPORTING SEX DISCRIMINATION AT XAVIER UNIVERSITY

The University informs individuals about their right to file criminal charges and the availability of counseling, health, mental health, victim advocacy, legal assistance, visa and immigration assistance and other services on and/or off campus as well as additional remedies to prevent contact between a Complainant and Respondent, such as housing, academic, transportation and working accommodations, if reasonably available. The University will make such accommodations, if the victim requests them and if they are reasonable and available, regardless of whether the victim chooses to report the crime to the Xavier University Police Department, local law enforcement, or to pursue a complaint under Xavier's internal complaint resolution process. All inquiries related to Sex Discrimination should be directed to Xavier's Title IX and Interpersonal Violence Response Coordinator, Gallagher Student Center, Room 332, Xavier University 3800 Victory Parkway, Cincinnati, OH 45207, 513-745-3046.

If an individual has been the victim of any form of Sex Discrimination, that person is strongly encouraged to report the incident promptly to the Title IX Office, Xavier University Police, and/or local law enforcement. If a victim desires to speak to a confidential resource they should contact Xavier's Campus Advocacy Coordinator (for Xavier students) or a local organization serving victims of these crimes (for students and employees) (see below for list of confidential resources with contact information).

Reports can be made to any of the following resources below. If an individual is unsure about what they want to have happen in response to the report, they should speak with a confidential resource first to help ensure that they understand all of their options, rights, and understand all confidentiality considerations (see Xavier's Title IX Sexual Harassment and Interpersonal Violence Reporting and Support Options resource sheet.

An individual has to right to report Sex Discrimination to University employees and/or to Xavier University Police and/or local law enforcement. Xavier University has an obligation to

respond to a report of Sex Discrimination under these HCAP procedures regardless of whether an individual makes a police report or pursues a criminal remedy.

## REPORTING RESOURCES

- Title IX and Interpersonal Violence Response Office (https://www.xavier.edu/titleix/) - (513)-745-3046, Gallagher Student Center, Room 332, 3800 Victory Parkway, Cincinnati, OH 45207;
- Law Enforcement- A violation of this HCAP may also be a violation of local, state, or federal law. Individuals may contact the Xavier University Police Department (http://www.xavier.edu/police/) or another local law enforcement agency to file a police report or to talk with a law enforcement officer about the possibility of filing a police report. If the situation is an off-campus emergency, call 911;
  - Xavier University Police Department (http://www.xavier.edu/police/) - (513)-745-1000 (on or near campus emergencies) or 513-745-2000 (non-emergencies), Flynn Hall, 1648 Herald Avenue, Cincinnati, OH 45207.
  - Cincinnati Police Department- 911/non-emergency (513)-765-1212.
  - Norwood Police Department- 911/non-emergency (513)-458-4520.
- Affirmative Action Officer, Human Resources (http://www.xavier.edu/hr/), Alumni Center, Room 132, 3800 Victory Parkway, Cincinnati, Ohio 45207-5400, (513)-745-3638.
- Dean of Students (http://www.xavier.edu/dean-of-students/), Gallagher Student Center, Room 302, 3800 Victory Parkway, Cincinnati OH 45207-2120, (513)-745-3166.
- Residence Life (http://www.xavier.edu/residence-life/) - (513)-745-3203, Rm. 009D, Musketeer Mezzanine in Justice Hall, 3800 Victory Parkway, Cincinnati, OH 45207.
- Center for Diversity and Inclusion (http://www.xavier.edu/diversity-inclusion/), (513)-745-3181, GSC 200/280, 3800 Victory Parkway, Cincinnati, OH 45207.

## CONFIDENTIAL SUPPORT AND ADVOCACY RESOURCES

- Xavier University Campus Advocacy Coordinator (http://www.xavier.edu/advocate/index) – during business hours at 513-904-9013. A trained staff advocate is available to provide confidential support, information, and advocacy to students who believe they have been a victim of Sex Discrimination. An individual does not need to report to the police to obtain an Advocate.
- Local Crisis and Support Provider - Women Helping Women (http://www.womenhelpingwomen.org/) (serving individuals of all sexes, sexual orientation, and gender identity) provides confidential crisis intervention and support services for individuals experiencing sexual assault, intimate partner violence, and stalking. 24-Hour Crisis Line (513)-381-5610, business line513-977-5541.
- Anonymous Reporting Hotline - 855-481-6238 or submit a report online (https://secure.ethicspoint.com/domain/en/report_company.asp?

clientid=34090andoverride=yesandagreement=no).

- Counseling- Outpatient counseling and psychotherapeutic treatment is available at no charge to Xavier students at Xavier's Health and Counseling Services (https://www.xavier.edu/health-wellness/index) (513)-745-3022, located at 1723 Cleneay Avenue next to Cohen Center parking lot, and the Psychological Services Center (https://www.xavier.edu/psychologicalservices/index) (513)-745-3531, located in the Sycamore House at 3818 Winding Way next to Schmidt Fieldhouse. Any individual may also choose to seek counseling services from a private provider. Individuals should contact their insurance provider to find out about possible insurance coverage for services from a private provider.

## 4.4.1 Confidentiality of Sex Discrimination Reports

- The following information relates to the confidentiality of reports of Sex Discrimination in accordance with Xavier's Title IX Sexual Harassment and Interpersonal Violence policies.
- The University strongly supports the privacy of individuals reporting Sex Discrimination and will honor requests for confidentiality within the University's response to the report if and where it is able while meeting its obligation to respond to Sex Discrimination under the law.
- Even if an individual who has been negatively affected by Sex Discrimination does not want to pursue the matter through Xavier's internal complaint resolution process and/or the criminal justice system, they should still consider making a confidential report to Xavier. The purpose of the confidential report is to maintain confidentiality while allowing Xavier to take steps to promote the future safety of the individual and the community. Anonymous reports can be made by calling the Anonymous Reporting Hotline at 855-481-6238 or submitting an anonymous report online (https://secure.ethicspoint.com/domain/en/report_company.asp? clientid=34090andoverride=yesandagreement=no).
- By reporting the incident, Xavier can keep an accurate record of the number of reported incidents, determine where there is a pattern of Sex Discrimination with regard to a particular location, method, or assailant, alert the campus community to potential danger, and initiate the HCAP. Pursuant to the Clery Act, reports of certain types of Sex Discrimination to Xavier (including but not limited to reports to the Title IX Office, Residence Life, Resident Assistants, the Dean of Students, the Campus Advocacy Coordinator, the Center for Diversity and Inclusion, the Anonymous Reporting Hotline, the Xavier University Police Department, and any other Xavier faculty, staff or administrator) must be counted and disclosed in the annual crimes statistics for Xavier (commonly called the "Clery Report"). Xavier's annual crime statistics report does not reveal the identities of the persons involved. Disclosure of the reported incident for inclusion in the annual crimes statistics does not typically involve disclosure of personally

identifiable information within Xavier except to the extent necessary to ensure the incident is not double counted. Only reports to pastoral and professional counselors (i.e., counselors at the Health and Counseling Services, Psychological Services) acting in their role of pastoral or professional counselor are not be disclosed and accurately counted in the annual crimes statistics for Xavier.

- In accordance with Xavier's Title IX Sexual Harassment policies and Interpersonal Violence policies, Xavier prohibits retaliation and will not only take steps to prevent retaliation but will also take strong responsive action if it occurs. If an individual who has been negatively affected by Sex Discrimination reports the incident and requests confidentiality or asks that the complaint not be pursued through this HCAP, Xavier will still take all reasonable steps to investigate and respond to the complaint consistent with the request for confidentiality or request not to pursue the investigation. Individuals should be aware that Xavier's ability to respond (including sanctioning the alleged perpetrator through the HCAP) may be limited by such a request. Still, Xavier will pursue other steps to limit the effects of the alleged discrimination and prevent its recurrence.

- Xavier must evaluate all requests for confidentiality in the context of its responsibility to provide a safe and nondiscriminatory environment for all employees and students. When weighing an individual's request for confidentiality that could preclude a meaningful investigation or potential discipline of the alleged perpetrator, Xavier will consider a range of factors. These factors include circumstances that suggest there is an increased risk of the alleged perpetrator committing additional acts of Sex Discrimination (e.g., whether there have been other sexual harassment or sexual violence complaints about the same alleged perpetrator, whether the alleged perpetrator has a history of arrests or records from a prior school indicating a history of violence, whether the alleged perpetrator threatened further sexual harassment, sexual violence or other violence against the individual or others, and whether the Sex Discrimination was committed by multiple perpetrators). These factors also include circumstances that suggest there is an increased risk of future acts of Sex Discrimination under similar circumstances (e.g., whether the report reveals a pattern of perpetration (e.g., via illicit use of drugs or alcohol) at a given location or by a particular group). Other factors that should be considered in assessing a request for confidentiality include whether the Sex Discrimination was perpetrated with a weapon; the age of the individual subjected to the Sex Discrimination; and whether the University possesses other means to obtain relevant evidence (e.g., security cameras, personnel, and/or physical evidence). The Title IX Office is responsible for evaluating request for confidentiality.

- Accordingly, Xavier cannot guarantee absolute confidentiality in response to every request, but will inform the person requesting confidentiality if confidentiality cannot be ensured in light of the foregoing or other factors.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 43 of 80 PAGEID #: 92



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.5 Sex Discrimination Response and Recovery

# 4.5 SEX DISCRIMINATION RESPONSE AND RECOVERY

After an incident of Sex Discrimination the victim should consider seeking medical attention as soon as possible at one of the medical facilities listed below. In Ohio, if an individual has experienced Sexual Assault or Rape, evidence may be collected even if the person chooses not to make a report to law enforcement. The University of Cincinnati Health SANE Program has certified Sexual Assault Nurse Examiners (SANE) who are specially trained to collect evidence from men and women who have been sexually assaulted. See below for contact information:

- **University of Cincinnati Medical Center (http://uchealth.com/university-of-cincinnati-medical-center/)**, 234 Goodman Street, Cincinnati, OH 45219, (513) 584-5700.
- **TriHealth Center for Abuse and Rape Emergency Services (CARES) (https://www.trihealth.com/institutes-and-services/rape-emergency-services/)**
  - Bethesda North Hospital, 10500 Montgomery Rd, Cincinnati, OH 45242, (513) 865-1111
  - Good Samaritan Hospital, 375 Dixmyth Avenue, Cincinnati, OH 45220-2489, (513) 865-5163

- It is important that a victim of sexual assault not bathe, douche, smoke, change clothing or clean the bed/linen/area where they were assaulted if the offense occurred within the past 72 hours so that evidence may be preserved that may assist in proving that the alleged criminal offense occurred/or is occurring or may be helpful in obtaining a protection order. In circumstances of Sexual Assault, if victims do not opt for forensic evidence collection, health care providers can still treat injuries and take steps to address concerns of pregnancy and/or sexually transmitted disease.
- Victims of Sex Discrimination are encouraged to also preserve evidence by saving text messages, instant messages, social networking pages, other communications, and keeping pictures, logs or other copies of documents, if they have any, that would be useful to University hearing boards/investigators or police.
- As time passes, evidence may dissipate or become lost or unavailable, thereby making investigation, possible prosecution, disciplinary proceedings, or obtaining protection

from abuse orders related to the incident more difficult. If a victim chooses not to make
a complaint regarding an incident, he or she nevertheless should consider speaking with
Xavier University Police Department or other law enforcement to preserve evidence in
the event that the victim changes her/his mind at a later date.

Although the University strongly encourages all members of its community to report violations
of this policy to law enforcement, it is the victim's choice whether or not to make such a
report and victims have the right to decline involvement with the police. The University will
assist any victim with notifying local police if they so desire. Xavier University Police
Department are sworn police officers with jurisdiction to investigate reports of sexual assault,
rape, dating violence, domestic violence, and stalking and work closely with local law
enforcement in investigating these offenses. The Cincinnati Police Department may also be
reached directly by calling 513-765-1212 or in person at any of the District stations (see maps
online at the web address below for all addresses, telephone numbers and directions to each
District Station.) Additional information about the Cincinnati Police Department may be found
online at: http://www.cincinnati-oh.gov/police/ (http://www.cincinnati-oh.gov/police/). The
Norwood Police Department may be reached directly by calling 513-458-4520. Additional
information about the Norwood Police Department may be found online at:
http://norwoodpolice.org/.

Xavier supports those striving for recovery after Sex Discrimination regardless of whether the
Sex Discrimination has been reported to Xavier or local law enforcement. Each individual's
experience is unique and recovery may go through many stages. Accordingly, Xavier seeks to
connect any employee or student affected by Sex Discrimination with a broad network of
recovery information and resources both on and off campus. This may include, but is not
limited to, crisis intervention/emergency psychological care; hospital and justice system
advocacy; educational groups; workshops; individual and counseling; peer education;
volunteer opportunities; and collaboration with peers, administration, and family.

Resources for victims of Sex Discrimination include:

On-Campus Resources

| Resource | Address/Loca |
|---|---|
| Office of Human Resources | Alumni Cente |
| Xavier Health and Counseling Services (counseling and medical for students) | 1723 Cleneay |
| Xavier Campus Advocacy Coordinator | Confidential a |

| Resource | Address/Loca |
|---|---|
| Xavier University Police Department | 1648 Muskete |
| Xavier Psychological Services | Sycamore Hou |
| Title IX and Interpersonal Violence Response Office | 332 Gallagher |
| Dean of Students | Gallagher Stu |
| Center for Mission and Identity | Justice Hall |
| Center for Diversity and Inclusion | Suite 200, Gal |
| Center for International Education | Suite 230, Gal |

Off-Campus Resources

| Resource |
|---|
| Cincinnati Police Dept. |
| Norwood Police Dept. |
| University of Cincinnati Medical Center |
| University of Cincinnati Health Sexual Assault Nurse Examiner (SANE) Program* |
| Women Helping Women |
| YWCA of Greater Cincinnati |
| Ohio Alliance to End Sexual Violence |

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 46 of 80 PAGEID #: 95

## Resource

Ohio Domestic Violence Network

Hamilton Co. Court of Domestic Relations

Hamilton Co. Court of Common Pleas

Juvenile Court

Hamilton Co. Prosecuting Attorney Victim Services

Legal Aid Society of Greater Cincinnati

University of Cincinnati Domestic Violence and Civil Protection Order Clinic

Ohio Domestic Violence Network Legal Assistance Program (lawyers available for sexual assau

Cincinnati Bar Association Lawyer Referral Service

Visa/Immigration Assistance- see all legal resources above and Catholic Charities Southwestern

Gay, Lesbian and Straight Education Network Greater Cincinnati Chapter

Rape, Abuse and Incest National Network

U.S. Department of Justice

U.S. Department of Education Office for Civil Rights



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.6. Prevention of Sex Discrimination

# 4.6. PREVENTION OF SEX DISCRIMINATION

The University engages in comprehensive, intentional, and integrated programming, initiatives, strategies, and campaigns intended to end Sex Discrimination that:

- Are culturally relevant, inclusive of diverse communities and identities, sustainable, responsive to community needs, and informed by research, or assessed for value, effectiveness, or outcome; and
- Consider environmental risk and protective factors as they occur on the individual, relationship, institutional, community and societal levels.

Educational programming consists of primary prevention and awareness programs for all incoming students and new employees, and ongoing awareness and prevention campaigns for students and employees that:

- Identifies Sex Discrimination as prohibited conduct;
- Defines using definitions provided both by the Department of Education as well as state law what behavior constitutes Sex Discrimination;
- Defines what behavior and actions constitute consent to sexual activity in the State of Ohio and/or using the definition of consent found in the HCAP and Student Code of Conduct if state law does not define consent;
- Provides a description of safe and positive options for bystander intervention. Bystander intervention means safe and positive options that may be carried out by an individual or individuals to prevent harm or intervene when there is a risk of dating violence, domestic violence, sexual assault or stalking. Bystander intervention includes recognizing situations of potential harm, understanding institutional structures and cultural conditions that facilitate violence, overcoming barriers to intervening, identifying safe and effective intervention options, and taking action to intervene;
- Information on risk reduction. Risk reduction means options designed to decrease perpetration and bystander inaction, and to increase empowerment for victims in order to promote safety and to help individuals and communities address conditions that facilitate violence;
- Provides an overview of information contained in the Annual Security Report in compliance with the Clery Act.

The University has developed an annual educational campaign consisting of presentations that include distribution of educational materials to new students; participating in and presenting information and materials during new employee orientation; and presentations, activities and other programming initiatives on an ongoing basis to employees and students.



Xavier Home (/) > HCAP (../../index) > Harassment Policy (../index) > 4.7 Sex Discrimination Complaint Resolution Process

# 4.7 SEX DISCRIMINATION COMPLAINT RESOLUTION PROCESS

The Title IX Coordinator, Affirmative Action Officer, and other applicable campus administrators will respond efficiently and effectively when Sex Discrimination is reported. Xavier has established the following guidelines pertaining to how Xavier responds to Sex Discrimination:

For all forms of Sex Discrimination, where applicable depending on particular circumstances of the situation:

1. Depending on when reported (immediate vs delayed report), institution will provide Complainant with access to medical care and assess immediate safety needs.
2. Institution will assist Complainant with contacting local police if Complainant requests and will provide Complainant with contact information for local police department.
3. Institution will provide written information to Complainant on how to preserve evidence.
4. Institution will assess need to implement interim or long-term protective measures, such as housing changes, change in class schedule, "No Contact" directives.
5. Institution will provide a copy of the Sex Discrimination Policy to Complainant and inform the Complainant regarding time frames for inquiry, investigation and resolution.
6. Institution will inform the Complainant of the outcome of the investigation, whether or not the Respondent will be administratively charged, and what the outcome of the hearing is.
7. Institution will enforce the anti-retaliation policy and take immediate and separate action against parties that retaliate against a person for complaining of sex-based discrimination or for assisting in the investigation.

Once on notice of potential Sex Discrimination, the University will initiate appropriate Title IX Sexual Harassment (Section 4.2.1) or Interpersonal Violence (Section 4.2.2) investigation and complaint resolution processes promptly and equitably as well as disciplinary procedures to those determined to have violated this policy. While the investigation and complaint

resolution process are pending, the University will provide resources, on-campus, off-campus or both, to include medical, health, counseling, legal assistance, victim advocacy, and visa and immigration assistance to the Complainant. These resources will be provided regardless of whether the Complainant decides to pursue and/or participate in an investigation and/or report to law enforcement.

While the time it takes to conduct an investigation depends on the particular facts and circumstances, most investigations will begin within 10 business days of a complaint being made and the Title IX Office will take all reasonable steps to conduct the investigation in a timely manner. These timelines may expand or contract depending on many factors including, but not limited to, the complexity of the matter, the availability of witnesses or evidence, or the time in the school year when the investigation takes place.

If a report of Sex Discrimination is reported to the University, the University will follow the procedures of this policy. The standard of evidence that will be used during any hearing or administrative decision on campus arising from such a report is preponderance of the evidence, which means it is more likely than not that the misconduct occurred.

The procedures are intended to afford a prompt response to complaints of Sex Discrimination, to maintain confidentiality and fairness consistent with applicable legal requirements, and to impose appropriate sanctions on violators of this policy.

When Xavier receives a report of Sex Discrimination, the Title IX Office will determine whether that report will be addressed under Xavier's Title IX Sexual Harassment policies or Xavier's Interpersonal Violence policies. Both policies are set forth below.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 51 of 80 PAGEID #: 100



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.1 Introduction To Procedures

# 5.1 INTRODUCTION TO PROCEDURES

The Xavier University Harassment Code and Accountability Procedures reflect the commitment to maintain a community that is free from harassment of any kind. Xavier has designed procedures for prompt internal resolution of harassment complaints that arise within the University Community. The University expects that the use of these procedures will facilitate and promote resolution of such complaints.

A member of the Xavier University Community who believes that they have been harassed in violation of this HCAP is encouraged to take action in any of the following ways provided for in these Procedures.

Some forms of harassment may violate federal and state laws, and a Complainant may choose to invoke external processes to resolve their grievances instead of or in addition to pursuing the procedures set forth herein. Such individuals may contact the appropriate state or local agency, the Equal Employment Opportunity Commission, the Ohio Civil Rights Commission or the United States Department of Education, Office of Civil Rights. Reporting parties should note that there are statutes of limitation for seeking remedies within these external processes.

Xavier will initiate or continue with any internal processes under this HCAP without regard to external processes, unless otherwise instructed by University Counsel.

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 52 of 80 PAGEID #: 101



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.1 Introduction To Procedures

# 5.1 INTRODUCTION TO PROCEDURES

The Xavier University Harassment Code and Accountability Procedures reflect the commitment to maintain a community that is free from harassment of any kind. Xavier has designed procedures for prompt internal resolution of harassment complaints that arise within the University Community. The University expects that the use of these procedures will facilitate and promote resolution of such complaints.

A member of the Xavier University Community who believes that they have been harassed in violation of this HCAP is encouraged to take action in any of the following ways provided for in these Procedures.

Some forms of harassment may violate federal and state laws, and a Complainant may choose to invoke external processes to resolve their grievances instead of or in addition to pursuing the procedures set forth herein. Such individuals may contact the appropriate state or local agency, the Equal Employment Opportunity Commission, the Ohio Civil Rights Commission or the United States Department of Education, Office of Civil Rights. Reporting parties should note that there are statutes of limitation for seeking remedies within these external processes.

Xavier will initiate or continue with any internal processes under this HCAP without regard to external processes, unless otherwise instructed by University Counsel.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.2 Applicability of Procedures

# 5.2 APPLICABILITY OF PROCEDURES

### 5.2.1 Xavier Employees and Students

- The Xavier University Harassment Code and Accountability Procedures reflect the commitment to maintain a community that is free from harassment of any kind. Xavier has designed procedures for prompt internal resolution of harassment complaints that arise within the University Community. The University expects that the use of these procedures will facilitate and promote resolution of such complaints.
- In all instances, the alleged harasser will be subject to the procedures relevant to their University Community status, i.e., student, administrator, faculty member or staff member. For example, if a staff member is alleged to have harassed an administrator, a student, another staff member or a faculty member, they will be subject to the harassment procedures for staff; if a faculty member is alleged to have harassed a staff member, another faculty member, an administrator or a student, they will be subject to the harassment procedures governing faculty; if an administrator is alleged to have harassed a staff member, a faculty member, another administrator or a student, they will be subject to the harassment procedures governing administrators; and if a student is alleged to have harassed a staff member, a faculty member, an administrator or another student, they will be subject to the harassment procedures governing students.
- The procedures specified in this HCAP apply to all administrators, faculty and staff.
- All the procedures specified in this HCAP also apply to students, except sections 5.7 - 5.14., which relate to the use of the formal process of investigating, adjudicating and resolving complaints. Alleged incidents of harassment against students that are to be pursued formally will be investigated and adjudicated under the procedures provided in the Xavier University Student Handbook.
- In the event that the Complainant is a student or, regardless of the student or employee status of the Complainant, if the conduct reported is Rape, Sexual Assault, or Sexual Exploitation, the resolution methods described in Section 5.8 Resolution Through the Informal Process and Mediation described in Section 5.9 Resolution Through the Formal Process, will not be permitted.
- Situations involving administrators, staff, faculty or students who believe they have been harassed, either on campus or in a university-related activity, by an individual who is not enrolled at or employed by Xavier (e.g., visitors, graduates of Xavier University,

applicants for admission or employment, former employees, contractors, or vendors), may be addressed only through the informal process for handling an allegation (described below in Section 5.8).

- For purposes of applying this HCAP, an administrator, a faculty member or staff member who participates in a University class or other activity as a student shall always be considered a faculty or staff member, respectively, even with respect to incidents occurring in such class or activity. Similarly, an undergraduate or graduate student receiving compensation or other benefit from the University for counseling, advocacy, clinical, tutoring, or teaching responsibilities, or who is employed by the University in any other manner shall be considered a student rather than faculty or staff.

### 5.2.2 All Others

- Situations involving individuals who are not enrolled at or employed by Xavier (e.g., visitors, graduates of Xavier University, applicants for admission or employment, former employees, contractors, or vendors) but who believe they have been harassed either on campus or in a university-related activity by someone who is enrolled at or employed by Xavier University may be addressed only through the informal process for handling an allegation (described below in Section 5.8.).

### 5.2.3 Contractors or Vendors Working on the Xavier Campus but Not Employed by the University

- Such individuals are treated as not enrolled at or employed by Xavier. Any use of the informal process by or against such individuals shall be in addition to any procedures provided in the individual's employment contract, union agreement, or other policy that relates to the individual's employment on the Xavier campus.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.3 Advice, Information, Counseling

# 5.3 ADVICE, INFORMATION, COUNSELING

Anyone may seek advice, information or counseling on matters related to harassment without having to file a complaint. Persons who feel they are being harassed, or are uncertain as to whether what they are experiencing is harassment, and/or desire information as to their options in dealing with harassment are encouraged to talk with one of the University resource persons listed below. Additionally, some forms of behavior that are disturbing to members of the Xavier University Community may not meet the definition of harassment found in this HCAP. Some behaviors may be violations of the Student Handbook, Faculty Handbook or the University's Policy and Procedures or may be covered by various grievance or dispute procedures.

To seek advice, information, or counseling about these issues, an individual may contact any of the following resource persons or offices: Human Resources, Title IX Office, Dean of Students, Chief Diversity and Inclusion Officer, Center for Diversity and Inclusion, Health and Counseling, Psychological Services, Xavier University Campus Police. Questions about handling complaints under any of the harassment procedures cited here may be directed to the Affirmative Action Officer.

Persons seeking advice, information or counseling should recognize that certain individuals have a duty to report harassment under his HCAP.

For resources regarding Sex Discrimination see HCAP Sections 4.4 and 4.5.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.4 Procedure for Reporting
Harassment

# 5.4 PROCEDURE FOR REPORTING HARASSMENT

An initial course of action for any Xavier employee, student or other individual who feels that
they are being harassed may be for that person to tell or otherwise inform the alleged
harasser that the conduct is unwelcome and must stop. Members of the University Community
who want to resolve their concerns in this manner may do so directly with the persons
involved, although it is recommended that a complaint be filed in all incidents of alleged
harassment to facilitate all concerns being resolved satisfactorily. This filing of a complaint also
helps the University identify alleged repeat incidents by the same individual, and gauge the
effectiveness of its anti-harassment policies and programs.

### 5.4.1 Filing a Complaint

- Any faculty member, staff member, administrator, student, or other person protected by
  this policy who has experienced or witnessed an incident of harassment they believe is a
  violation of this HCAP is encouraged to file a complaint with the Affirmative Action
  Officer. Alternatively, reports of harassment may be made to any of the following:
    - If the situation is an off-campus emergency, call 911;
    - Xavier University Police- (513)-745-1000 (on or near campus emergencies),
      (513)-745-2000 (non-emergencies), Flynn Hall, 1648 Herald Avenue;
    - If the matter may constitute Title IX Sexual Harassment or Interpersonal Violence:
      Title IX and Interpersonal Violence Response Office - 513-745-3046, 332 Gallagher
      Student Center;
    - If the matter may constitute Title IX Sexual Harassment or Interpersonal Violence:
      Xavier's Campus Advocacy Coordinator - (513)-904-9013;
    - Human Resources - (513)-745-3638 Alumni Center, Room 132,
    - Residence Life- (513)-745-3203, Rm. 009D Musketeer Mezzanine, Justice Hall;
    - Dean of Students- (513)-745-3166, Gallagher Student Center, Suite 300, 3815
      Ledgewood Avenue;
    - Anonymous Reporting Hotline - (855)-481-6238; to submit a report online, follow
      the link on the Audit and Risk Management's website:

http://www.xavier.edu/controller/hotline.cfm

- A complaint against the Affirmative Action Officer may be filed with the University President.
- A complaint may be filed even if the person making the Complainant is uncertain whether the conduct of another rises to the level of harassment prohibited under this HCAP.

### 5.4.2 When Submitted

- The Complainant should submit the complaint as soon as possible following the incident or incidents of alleged harassment for which a complaint is filed.

### 5.4.3 Form of the Complaint

- A complaint may be submitted in writing to the Affirmative Action Officer or, in Title IX Sexual Harassment and Interpersonal Violence cases, the Title IX Office. An oral complaint may also be made to these individuals and they will document the facts of the complaint in writing.

### 5.4.4 Policy on Amnesty

- Xavier University is committed to promoting the health, wellbeing and safety of all members of our community. At times, students on and off-campus may need emergency assistance from University officials. In accordance with our Jesuit values, Xavier University encourages students to offer help and assistance to others in need. Xavier University recognizes that at times students may be hesitant to call for assistance, for fear of negative consequences related to their own behavior (for example, an underage student who has consumed alcohol might hesitate to request medical attention for an intoxicated student or help take a sexual assault victim to Xavier University Police Department).
- Xavier's Policy on Amnesty is designed to encourage a student to seek emergency assistance for oneself or a fellow student during an alcohol, drug or other medical emergency. The Amnesty Policy encourages a bystander or an impaired student to call for immediate medical assistance by eliminating the sanctions typically applied under Xavier's Alcohol and Other Drug Policy. Students who qualify for Amnesty will receive educational interventions rather than formal conduct charges and sanctions.
- To qualify for Amnesty, students must do the following:
  - Contact and obtain assistance from Residence Life Staff, Title IX Office, Xavier University Police Department, medical professionals and/or local law enforcement;
  - Cooperate with all directives of the University officials or local law enforcement personnel responding to the incident.

- Meet with a Residence Life staff member and/or the Dean of Students or designee to discuss educational options and comply with all assigned educational interventions.

- The Xavier University Policy on Amnesty is not intended to shield or protect those students who repeatedly violate the Xavier University Code of Student Conduct. In cases where repeated violations of the Xavier University Code of Student Conduct occur, the University reserves the right to take student conduct action on a case by case basis regardless of the manner in which the incident was reported.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.5 Supportive and Interim Measures for Individuals and/or the Campus Community

# 5.5 SUPPORTIVE AND INTERIM MEASURES FOR INDIVIDUALS AND/OR THE CAMPUS COMMUNITY

Pending resolution of an HCAP matter, "Interim Measures" may be taken by the Affirmative Action Officer, Dean of Students (students only), Director of Residence Life (students only), Title IX Coordinator (in matters involving Sex Discrimination only), or Xavier University Police when there is a significant conduct or health and safety concern that requires immediate intervention to preserve and support the general welfare and academic experience of one or more Xavier individuals and/or the Xavier community. Requests for Interim Measures should be directed to these individuals. Violations of any Interim Measures may constitute separate HCAP violations that may lead to additional disciplinary action. Supportive and Interim measures imposed may be temporary pending the results of an investigation and/or employee conduct process or may become permanent as determined by Xavier University.

The following is a non-exclusive list of examples of Supportive and Interim Measures that may be implemented, when determined to be necessary and appropriate.

## 5.5.1. No Contact Notice

- A No Contact Notice can be issued to prevent a person from contacting another person. Note that confidentiality of the requesting party's identity cannot be maintained when a No Contact Notice is requested to keep the individual alleged to have violated the HCAP from having contact with the person making the request for no contact.

## 5.5.2. Externally Issued Protective Orders

- Xavier University encourages any person who obtains an order of protection from any U.S. state to provide a copy to the Xavier University Police Department and the Title IX Office. That person may then meet with Xavier University Police Department and/or the Title IX Office to develop a Safety Action Plan intended to reduce risk of harm to the individual while on campus or nearby campus. This plan may include, but is not limited

to escorts; providing a temporary cellphone; changing classroom location, supervisor or work location; or allowing a student to complete assignments from home.

- Upon receiving notice and a copy of an externally issued protective order from a court of competent jurisdiction, Xavier University Police Department will assist in the enforcement of the order, including responding to reported violations of the protective order. While alerting the Xavier University Police Department o the existence of a Civil Protection Order (CPO) and/or seeking assistance from Xavier Police regarding a potential violation of a CPO, these actions will not necessarily trigger Xavier Police having to initiate an investigation (particularly if the individual expresses her or his preference that Xavier Police not do so), but individuals should know that contacting Xavier Police regarding a CPO may put them on notice that Sex Discrimination may have occurred and Xavier Police will then be required to report that information to the Title IX Office. For more information on the Title IX Office's response to reports of Sex Discrimination, see Section 4.5 and Section 4.7 of this HCAP.
- The University cannot apply for a legal order of protection for the victim from the applicable jurisdiction(s). The victim is required to apply directly for these services. For access to all required forms related to orders of protection, visit the Hamilton County Clerk of the Courts page at https://www.courtclerk.org/cp_civil_forms.asp.
- Types of Protection Orders in Ohio
- There are different kinds of Protection Orders available to victims of domestic violence, sexual assault and stalking. Depending on who the perpetrator is, what happened, and other factors, there are differences in where, when and how you seek these orders, what they do, and how long they last. Xavier's Annual Security Report provides basic information on each, and then detailed information follows. Ohio has jurisdiction over these cases as long as some of the acts occurred in Ohio, regardless of where the perpetrator lives. In Protection Order cases, the person who files the motion for the Protection Order is the "Petitioner" and the accused perpetrator is the "Respondent."
- For more information on the types of Protective Orders, please see Xavier's Annual Security Report at http://www.xavier.edu/clery/documents/2014-15ASR.pdf.

### 5.5.3. Escorts

- Arrangements may be made so that an individual has an escort (a friend, a police officer, or another individual) at particular times (e.g., to/from a particular class, activity, office, to/from his or her vehicle, etc.).

### 5.5.4. Added Police Presence

- Xavier University Police Department presence may be increased in a particular area or over the entire campus.

### 5.5.5. Making Adjustments to On-Campus Living and Working Arrangements

- Adjustments may be made to a Complainant's on-campus living arrangements, if space allows, and to their work arrangements where possible. For example, a student may be required to move to a different dormitory if they are in the same dormitory as a student who has been personally adversely affected by an alleged violation of the HCAP. A student may also be required to move off-campus in certain circumstances.

## 5.5.6. Making Adjustments to Class Schedules, Employment, or Xavier Activities

- Adjustments can be made to a student's class schedule and/or their participation in a Xavier activity (e.g., a student club, a club or NCAA athletic team, a Xavier-sponsored trip, etc.) may be limited or restricted, pending the resolution of an HCAP matter. For example, a student may be required to withdraw from or make other arrangements for participating in a particular class that is shared with a student or other individual who has been personally adversely affected by an alleged violation. Note that the burden of any change will usually be placed on the student alleged to have violated the HCAP. If the resolution of the underlying matter does not result in a separation from Xavier (i.e., suspension or expulsion), measures will be taken to assist the student in mitigating any negative academic impact resulting from the temporary adjustments to his or her class schedule or Xavier activities. Similarly, adjustments can be made to an employee's work schedule and arrangement pending the resolution of an HCAP matter.

## 5.5.7. Separation from Xavier

- An individual may be separated from Xavier, including removal from all housing, classes, employee duties and activities, pending the resolution of an HCAP matter.

## 5.5.8. Other Interim Measures

- Other Interim Measures may be implemented if deemed appropriate by the Affirmative Action Officer (with respect to faculty, staff and administrators), the Dean of Students (with respect to students), and the Title IX Office (in Sex Discrimination reports only) based on the facts and circumstances of a particular situation.

## 5.5.9. Emergency Administrative Action

- Should an individual pose an immediate danger to, or severely disrupt the Xavier community or endanger any individual, one or more Interim Measures may be taken as an Emergency Administrative Action. The decision whether or not to take Emergency Administrative Action will be at the sole discretion of the Affirmative Action Officer (with respect to staff, faculty and administrators) or the Dean of Students (with respect to students). In matters of Sex Discrimination, the Affirmative Action Officer and Dean of Students will consult the Title IX Office.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.6 Pattern of Harassment

# 5.6 PATTERN OF HARASSMENT

Except in Title IX Sexual Harassment matters (Sections 4.2.1 and 4.7.1), the Affirmative Action Officer may initiate a complaint of harassment to be pursued formally under these procedures against any individual they have reason to believe has engaged in a pattern of harassment, based upon the number of complaints filed against the individual and resolved through informal procedures, mediation, or by a formal hearing. In the event of this type of complaint, the Affirmative Action Officer functions as the Complainant. In connection with the complaint, the President or their designee performs all functions assigned to the Affirmative Action Officer in the process for resolution of harassment complaints.

If the Affirmative Action Officer files a complaint under this provision, the individual who reported experiencing the harassment has the right to pursue their own complaint concurrently or at any time within this policy's time limits (see Section 5.7.1.). If the individual who reported the harassment chooses not to pursue their own complaint in this context, they can elect for the Affirmative Action Officer to include their complaint into the complaint of harassment filed by the Affirmative Action Officer under the Pattern of Harassment provision either with or without identifying information.

If a formal hearing is scheduled to determine whether a Respondent is responsible for violating the HCAP under this provision, the Affirmative Action Officer will provide the Hearing Panel member with a redacted history of prior relevant complaints and subsequent related actions. Relevancy of prior complaints to the current matter will be determined by the Affirmative Action Officer.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.7 Beginning the Process of Resolution of a Complaint

# 5.7 BEGINNING THE PROCESS OF RESOLUTION OF A COMPLAINT

Once a complaint is filed, the Affirmative Action Officer (and/or any resource person listed in Section 4.4 above with whom the Complainant has counseled) will assist the Complainant to end conduct that they believe violates this HCAP. Within 10 days after the filing of a complaint, the Affirmative Action Officer will arrange a meeting with the Complainant and other resource persons, as is appropriate. At this meeting, the Affirmative Action Officer and/or resource persons will work with the Complainant to determine and then implement the best approach(es) to satisfactorily resolve the matter. This shall include deciding whether to proceed informally or formally. Notwithstanding the foregoing, in the event that the Complainant is a student or, regardless of the student or employee status of the Complainant, if the conduct reported is Rape, Sexual Assault, or Sexual Exploitation, the resolution methods described in Section 5.8 Resolution Through the Informal Process and Mediation described in Section 5.9 Resolution Through the Formal Process, will not be permitted. In all situations in which the informal process may be used, the Complainant has the right to reject the use of the informal process.

Subject to the foregoing, the Complainant's wishes will be respected to the fullest extent possible in determining the appropriate course of action.

### 5.7.1. Time Limits

- All complaints of harassment are to be filed with the Affirmative Action Officer as soon after the offending conduct as possible. Notwithstanding Title IX Sexual Harassment complaints by students, formal procedures will only be used with respect to complaints filed no more than two (2) years after the most recent conduct alleged to constitute harassment. The Affirmative Action Officer may grant a reasonable extension of any time period established in these guidelines, except where otherwise noted.
- The University's two year time limit on the filing of claims of harassment for which formal procedures may be used is intended to encourage Complainant to come forward as soon as possible after the offending conduct and to protect responding parties

Case: 1:23-cv-00066-MWM Doc #: 4 Filed: 02/03/23 Page: 64 of 80 PAGEID #: 113

against complaints that are too old to be effectively investigated. Further, delay may make addressing the harassment difficult as witnesses may no longer be able to recall events, witnesses may have gone on to other programs or employment, corroborating evidence may not be available, and/or intervening events may have occurred.

- Although a complaint that is filed after the two year time period cannot be pursued under the formal procedures, informal procedures may be used at any time. Additionally, if sufficient evidence is available, disciplinary action under other judicial processes may be available to address the improper behavior.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.8 Resolution Through the
Informal Process

# 5.8 RESOLUTION THROUGH THE INFORMAL PROCESS

Although an attempt to informally resolve a harassment complaint is not required before an
individual may use formal procedures, the University's HCAP favors informal resolution of
harassment claims whenever such resolutions can be affected fairly. The exception to this
preference is in matters involving allegations of Title IX Sexual Harassment made by a student
or allegations of Rape, Sexual Assault, or Sexual Imposition made by any individual. In these
circumstances, the matter will automatically bypass the informal process and the Mediation
option and process described in Section 5.9.2, and will proceed to a formal hearing process
(Section 5.9.3 Formal Hearing Process). Despite use of any process to achieve an informal
resolution, formal procedures may be instituted at any time under the procedures described in
Section 5.9.

## 5.8.1. Achieving an Informal Resolution

- Below is a list of common approaches to resolving a matter informally. This list is not
  exhaustive and other approaches may be appropriate depending on the particular facts
  and circumstances.
- The Complainant, either alone or with another person, may meet with the Respondent
  to discuss the situation, identify the unwanted behavior, and make it clear that the
  behavior must cease. The Affirmative Action Officer or resource person can help the
  Complainant prepare for this meeting.
- The Affirmative Action Officer or resource person may discuss the alleged conduct with
  the Respondent, reminding them of University policies against harassment, and seeking
  a commitment by the Respondent to comply with the HCAP.
- The Respondent's supervisor or academic advisor may be contacted and asked to help
  address the situation with the Respondent.
- The Affirmative Action Officer may suggest that the Complainant discuss the situation
  with individuals who are available through the following offices in order to determine
  the best way to proceed:
    - Human Resources

- Dean of Students
- Center for Diversity and Inclusion
- Health and Counseling
- Psychological Services
- Campus Police
- Title IX Office (in matters of Sex Discrimination only)

### 5.8.2. Monthly Status Meetings

- During the informal resolution process, monthly status meetings shall be held until an informal resolution is reached, or until the formal process is initiated. This meeting should include the Complainant, the Affirmative Action Officer and/or any resource person involved in the informal resolution process.
- The first meeting shall be scheduled to occur approximately one month after the date of the decision to proceed informally made under Section 5.8.
- At each status meeting, those present will discuss what action has been taken and what action should be taken. This should include discussing whether to continue with the informal process or begin the formal process.

### 5.8.3. Form of an Informal Resolution

- An informal resolution may include, but is not limited to, the matter being brought to the attention of the Respondent, an agreement to terminate and not repeat specific conduct, an apology, and/or participation in education, training, or counseling. An informal resolution typically will not include any sanction against the Respondent. A complaint may also be resolved informally with the Complainant signing a Request for No Action and submitting it to the Affirmative Action Officer.
- If a complaint is filed against a non-member of the University Community, resolution of the complaint shall be limited to reporting the alleged incident to an appropriate party and/or notifying the individual he or she is not permitted on the Xavier campus.
- The Affirmative Action Officer shall review all informal resolutions so that the parties fully understand the terms.
- All resolutions resulting in an agreement between the Complainant and Respondent (e.g., an agreement not to repeat specific conduct) must be agreed to and signed by both parties. Any breach of the terms of this agreement may result in disciplinary action or a further claim of harassment. If the resolution does not include any agreement (e.g., the matter being brought to the attention of the Respondent), a statement of the resolution must only be signed by the Complainant .
- An informal resolution achieved or agreement signed by the parties does not constitute a finding of harassment. However, any conduct admitted to by the Respondent while attempting to resolve the matter informally or in resolution of the matter, may be considered in any mediation or formal hearing against the same Respondent, brought

by the same Complainant. Additionally, the fact that a complaint was filed and an informal resolution was reached may be used by the Affirmative Action Officer in a formal proceeding against the Respondent as described in Section 5.8.3 or Section 5.9.

### 5.8.4. Anonymity

- A Complainant may request that, whenever possible, a conversation with the Respondent for purposes of resolving a complaint informally will be held without revealing the Complainant's identity directly to the Respondent. If the resolution to a specific matter is to include an agreement between the parties, the Complainant's identity must be revealed to the respondent party.

### 5.8.5. Record of Informally-Resolved Complaints

- After a complaint has been resolved informally, all documentation concerning the complaint will be maintained in the Affirmative Action Office under both the Complainant's name and the Respondent's name for the shorter of: (1) five years after the resolution of the matter in which it was created, or (2) one year after the Complainant ceases all employment by and/or enrollment at Xavier University. At the end of that time period, the Affirmative Action Officer shall destroy all the documentation and shall keep permanent record only consisting of the names of the Complainant and Respondent, the status of each (e.g., faculty, student), the incident date and the date of resolution. Such records will be kept in order to document that the claim of harassment was made and that an informal resolution was reached without a finding in the situation. This documentation may be used:
    1. If the Complainant raises a question about how the claim was handled.
    2. If the Respondent wishes to establish that the matter which the same Complainant now seeks to pursue formally (by the same or a later complaint) was already informally resolved.
    3. Any information regarding conduct admitted to by the Respondent while attempting to informally resolve or in an informal resolution of a complaint may be provided by the Affirmative Action Officer to a Hearing Panel or Mediator to be considered in reviewing a complaint pursued formally against the Respondent, if both complaints were filed by the same Complainant.
    4. The fact that a complaint was filed and an informal resolution was achieved may be used by the Affirmative Action Officer in a future proceeding against the same Respondent as described in Section 5.8.3 or Section 5.9.
- In the unusual circumstance that an informal resolution does involve a sanction against the Respondent, the official responsible for implementing the sanction must maintain a record of the resolution for the purposes of enforcing the sanction. In such a case, see section 5.8.5 to determine the responsible official.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.9 Resolution Through the Formal
Procedures

# 5.9 RESOLUTION THROUGH THE FORMAL PROCEDURES

Although use of the informal process is not required, the formal procedures are ordinarily
used only if informal resolution is not agreed upon or fails to resolve a concern satisfactorily,
or if the matter involves allegations of Title IX Sexual Harassment by a student, or involves
allegations of Rape, Sexual Assault, or Sexual Imposition by any Complainant, or is otherwise
so serious as to warrant an immediate use of the formal procedures. Disciplinary action will
result from a finding of responsibility under the formal procedures.

The formal process for resolving a complaint should proceed using the timelines given below.
The Affirmative Action Officer, in their sole discretion, may adjust any time periods as
necessary to promote the proper resolution of each complaint. Time periods governing the
conduct and participation of reporting parties or responding parties shall be strictly enforced,
unless specifically adjusted by the Affirmative Action Officer, in their sole discretion. All other
time periods shall be guidelines, and though it is important to act promptly, strict adherence
to these guidelines may not be possible in some or many instances.

For purposes of Sections 5.7 - 5.10, one business day shall be any weekday school is in session,
according to the University's academic calendar, including the fall, spring and summer
semesters.

### 5.9.1. Pre-Hearing, Pre-Mediation Procedure

- Within seven business days of the determination to address a complaint using the
  formal procedures, the Affirmative Action Officer will provide the Respondent with a
  copy of the complaint. The Respondent may submit a written response to the charges of
  harassment to the Affirmative Action Officer within ten business days of the date the
  copy of the complaint was sent to the Respondent. Upon receipt of an answer by the
  Respondent, the Affirmative Action Officer will forward a copy of the response to the
  complainant. A complaint requiring use of the formal process will be resolved either
  through mediation or by a formal hearing. Mediation is not appropriate and will not be

offered in matters involving allegations of Title IX Sexual Harassment by a student or in allegations of Rape, Sexual Assault, or Sexual Imposition by any individual under Xavier's Interpersonal Violence policies, or in cases of complaints alleging conduct so serious as to warrant an immediate use of the formal procedures. The Affirmative Action Officer has sole discretion to determine whether the alleged conduct is so serious as to warrant immediate use of a formal hearing. In such matters, formal hearing procedures will be initiated promptly.

- The Complainant and Respondent have five business days from when they receive written notice from the Affirmative Action Officer that the formal procedures will be initiated to indicate to the Affirmative Action Officer in writing the procedure (mediation or a formal hearing) that they wish to use to resolve the complaint.
- If either the Complainant or the Respondent or both request a formal hearing, the formal hearing procedures will be initiated after the conclusion of the five day period.
- If neither party requests a formal hearing within the five business days and mediation is allowable under the terms of this HCAP, the Affirmative Action Officer will notify the Complainant and Respondent that mediation will be initiated at the conclusion of the five day period.
- The Affirmative Action Officer will designate a mediator within ten business days of receipt of such request.

### 5.9.2. Mediation of a Complaint

- The mediator will schedule a meeting with each of the parties, together or separately, to attempt to negotiate a settlement of the complaint. If a resolution is not reached within ten business days of the initial meeting, the Affirmative Action Officer will inform both parties in writing that either may seek a resolution of the complaint by a formal hearing.
- Upon request by the Complainant, the Affirmative Action Officer may provide for the Mediator's consideration, information regarding any conduct admitted to by the responding party while attempting to resolve, or in resolution of this or any other complaint filed by the same Complainant against the same Respondent.
- A settlement occurs when the parties agree in writing to a resolution of the complaint. A resolution may include, but is not limited to, withdrawal of the complaint without the right to re- file it; an agreement by the Respondent to terminate or not repeat specific conduct; an apology; and/or participation in counseling. The Affirmative Action Officer reviews all resolutions so that the parties are fully informed of the terms. If there is any sanction agreed to as part of the resolution, the official responsible for implementing any such sanction must also agree to the resolution in writing. Resolution need not imply an admission of violation on the part of the Respondent.
- Whether or not a settlement is reached, all information and documentation used in the mediation that is not otherwise available under other provisions of this HCAP will

remain confidential and may not be used in any future proceedings involving the same or different parties. However, the fact that a complaint was filed and a settlement was reached through mediation may be used by the Affirmative Action Officer in a future formal proceeding brought by the same or a different Complainant against the same Respondent, as described in Section 5.8.3. or Section 5.9.

### 5.9.3. Initiation of the Formal Hearing Process

- A formal hearing process is initiated 1) once the Affirmative Action Officer has been notified by either the Complainant or Respondent or both of their desire to proceed with a formal hearing; 2) instances in which where mediation is not permitted; 3) where mediation was attempted and the matter was not resolved; and 4) once the Affirmative Action Officer notifies the Respondent that they will proceed as the Complainant under Section 5.6 Pattern of Harassment.
- Where mediation was attempted and the matter was not resolved, either party may request appointment of a Harassment Hearing Panel (Hearing Panel) to resolve the complaint by a formal hearing. The request for a hearing must be made no later than seven business days after the party receives written notice of the right to proceed. The request must be in writing, signed by the party making the request. A formal hearing process is initiated once the request is received by the Affirmative Action Officer.

### 5.9.4. Pre-Hearing Timeline

- Within ten business days of the initiation of the formal hearing process the Affirmative Action Officer will notify the Complainant and Respondent of the members of the Hearing Panel. The Complainant and Respondent will then have three business days to object in writing to any one or more of the members of the Hearing Panel, or raise potential conflicts of interest. Any decision to change a member or members of a Hearing Panel will be in the sole discretion of the Affirmative Action Officer. If any objections are raised, the Affirmative Action Officer will notify the Complainant and Respondent of the final Hearing Panel members (whether changed or not) within five business days after receiving the last objection.
- The Affirmative Action Officer will notify the Complainant and Respondent of the hearing date, time and place, which shall be set for no less than 10 but no more than 21 business days after the date the Hearing Panel members are finalized. The hearing may be set for an earlier or later time for good cause as determined in the discretion of the Affirmative Action Officer or by agreement of the Complainant and Respondent.
- At least 5 business days before the hearing the Complainant and Respondent will be provided with the documents gathered to date to be presented to the Hearing Panel (including the Interpersonal Violence Investigation Report in matters of Interpersonal Violence). FERPA protected information may be redacted.

- At least three business days before the hearing, the Complainant and Respondent must submit to the AAO any additional documents or other materials they want considered in the hearing as well as a written list of witnesses they want to testify at the hearing.
- At least three business days before the hearing the Complainant and Respondent will be provided a list of all witnesses who will be called at the hearing, including witnesses submitted by the Complainant, Respondent, and Xavier.
- As soon as possible after their selection, the Hearing Panel shall select a Chairperson from among the members of the Panel to serve for the duration of the Hearing procedures for which this Panel was selected. The Chair may then consult with the Affirmative Action Officer about the complaint to determine the need for any consultants to assist the Hearing Panel during or after the formal hearing.

### 5.9.5. Composition of Harassment Hearing Board

- The Harassment Hearing Board consists of 24 members and are selected and serve as described in Xavier University Committees. For employee committee membership, see http://www.xavier.edu/employees/faculty/committee-groups. For student committee membership, see. Information specific to Title IX Sexual Harassment and Interpersonal Violence matter will be included in the Harassment Hearing Board members' annual training. Certain members of the Harassment Hearing Board will receive additional, specific training to serve as the Hearing Panel Chair.

### 5.9.6. Selection of a Harassment Hearing Panel

- The Affirmative Action Officer maintains the roster for each category of Harassment Hearing Board members (faculty, staff, and students).
- The Affirmative Action Officer will select a Hearing Panel of three members of the Harassment Hearing Board to hear each complaint set for a formal hearing. The Affirmative Action Officer will adhere to the following guidelines in making the selection:
    - A Panel will include one student, one faculty, and one staff member. Either the faculty or staff member of the Hearing Panel will be trained to serve as the Chair.
- No member of the Panel may hear a case involving a party if the Affirmative Action Officer deems it to be a conflict of interest.
- Any member who has a conflict of interest will be removed and may be replaced by another member from the same category in the same manner that the conflicted member was selected.

### 5.9.7. Harassment Panel Hearing Procedures

- Consistent with customary standards of fairness and with procedures specified in this HCAP, the Hearing Panel will determine the most appropriate manner to proceed with a case. In all formal hearings, the following guidelines are intended to protect the rights

of both parties and to assure the fairness of the process. For information specific to Title IX Sexual Harassment Hearings, see Section 4.7.14.

- For a hearing to proceed, a quorum of no less than five members must be present. If quorum is not achieved, the hearing will be rescheduled.
- Both parties have the right to attend the hearing. Failure of one party to appear will have no effect on the hearing proceeding, and the Hearing Panel will reach a decision based on the evidence available.
- Neither party may be compelled to testify.
- Both parties have the right to present evidence and to call a reasonable number of witnesses as determined by the Hearing Panel.

- Witnesses may be present only when testifying.
- The Complainant, Respondent, and Xavier may identify witnesses to be called at the hearing. Only witnesses with knowledge directly related to the pending allegation will be allowed to testify at the hearing. Witnesses may be dismissed from the hearing if their statements is based on opinion or perceived character alone. A Hearing Panel may reasonably limit the scope and time devoted to each case or item of discussion during the hearing, including the number of people testifying or providing information. Specifically, corroboration provided by witnesses shall be allowed where appropriate, but repetitive, discussion, or witness material may be limited.
- In matters involving Sex Discrimination the Title IX Coordinator or Title IX Program Director will serve as a witness in the hearing and will answer questions from the parties and/or Hearing Panel members related to the investigation report only. The Title IX Coordinator or Title IX Program Director will not offer an opinion or conclusion as to whether they believes the responding is responsible for violating any provisions of this HCAP.
- Both parties have the right to question all witnesses.
- In matters involving Interpersonal Violence, the Complainant has the right to request to be separated from the responding during the hearing. The Complainant's request will be accommodated at the discretion of the Hearing Panel, so long as the Complainant's rights to hear all information presented and confront all witnesses who testify at the hearing are preserved. For example, the Complainant may be in a separate room from the Hearing Panel and the Respondent, where by use of closed circuit television or other technology, the parties in each room may communicate with each other without being in close proximity to one another.
- Using a general measure of relevance and credibility to the complaint being heard, the Hearing Panel will determine what statements will be permitted at the hearing.
- In matters involving Interpersonal Violence, other than those complaints brought by the Affirmative Action Officer alleging a Pattern of Harassment under Section 5.6, the only sexual history evidence that may be used in the hearing is that of the parties with each other, if it is relevant. However, if a party introduces their own sexual history in

furtherance or defense of their position, the other party may then discuss that party's sexual history, if it is relevant.

- Upon request by the Complainant or the Hearing Panel, the Affirmative Action Officer may provide for the Hearing Panel's consideration, information regarding any conduct admitted to by the Respondent while attempting to informally resolve, or in an informal resolution of a complaint filed by the same Complainant against the same Respondent.
- At the Affirmative Action Officer's discretion, multiple incidents involving the same individual may be considered in one hearing.
- Hearing Panel proceedings are not governed by the rules of evidence used by the courts.
- A non-party witness may not testify about any misconduct by the parties except the conduct alleged in the complaint.
- Each party has a right to an advisor from the student body, faculty, administration or staff. This representative, not functioning as legal counsel, may help with preparation of the case, may be present when the case is heard, and may confer with the party during the hearing. Neither party may have legal counsel present at the hearing. In matters involving allegations of Interpersonal Violence, the Complainant and Respondent have the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice, including an attorney. The advisor may help the party prepare their position but may not present it or speak for or on behalf of the party in the meeting or proceeding.
- Hearings will be audio tape recorded by the University. No audio or video recording of any nature may be taken by parties or witnesses.

### 5.9.8. Standard of Evidence

To find a violation of Xavier University's HCAP, the Hearing Panel must find sufficient evidence to conclude by a preponderance of the evidence that the Respondent violated the policy. While the Hearing Panel does not draw a negative inference from the failure of either party to attend a hearing or to testify, a choice not to appear or testify does not change the burden of proof.

### 5.9.9. The Hearing Panel's Deliberation

In deciding whether a violation of the HCAP has occurred, the Hearing Panel attempts to reach a consensus. If consensus cannot be reached, a vote is taken. All decisions of the Hearing Panel are made by a majority.

### 5.9.10. Sanctioning

If the Hearing Panel finds that the Respondent violated the University's HCAP, it will determine the appropriate remedial action, taking into consideration all of the circumstances of the Respondent's conduct. Once it has determined that the Respondent violated the HCAP, it may seek a statement from the Affirmative Action Officer about prior procedures brought against the Respondent by a Complainant alleging harassment. The Affirmative Action Officer's statement will be limited to the following:

- The fact that a complaint was filed by the same or a different Complainant against this same respondent and the outcome of that complaint;
- Any conduct admitted to by the Respondent while attempting to informally resolve or in an informal resolution of a complaint filed by the same Complainant against this same Respondent;
- The fact that a complaint was made by the same or a different Complainant (whose name will be redacted) against this same Respondent and the outcome

The Hearing Panel may consider this information in determining an appropriate sanction.

Examples of the types of sanctions that the Hearing Panel may issue include, but are not limited to the following: participation of the Respondent in counseling; required community service; prohibition of the Respondent from participating in grading, honors, recommendations, reappointment and promotion decisions, or other evaluations of the Complainant; letter of reprimand and copy of grievance record placed in the Respondent's permanent file; restrictions on the Respondent's access to University resources, such as merit pay or other salary increases for a specific period; or suspension or dismissal from the University.

In addition, the Hearing Panel may seek to make the Complainant whole by requiring a review of the Complainant's grade, denial of promotion or similar benefit denied to the Complainant, in whole or in part by the Respondent. Any such decision by the Hearing Panel shall be given to the Respondent's supervisor in a position to conduct such a review to determine if a change is proper, and to effect the change.

### 5.9.10.1 Benchmark Sanctions for Interpersonal Violence

If an employee is found responsible for violating the Interpersonal Violence provisions of the HCAP, the following benchmark sanctions are a starting point for determining the appropriate sanction. Actual sanctions imposed are determined on a case-by-case basis and may be greater or lesser than the benchmark sanctions. These benchmark sanctions are intended to offer guidance to the individuals and panels imposing and recommending sanctions, and to alert the Xavier community of the serious nature of certain violations. Although benchmarks are

only provided for certain violations, sanctions may be imposed for violations which are not included in this list.

Sexual Harassment. Given the potential range of behaviors that constitute Sexual Harassment sanctions may range from a Letter of Reprimand to Termination.

Public Indecency. The benchmark sanction for an employee who is found responsible for public indecency is Letter of Reprimand to Termination.

Sexual Exploitation. The benchmark sanction for an employee who is found responsible for sexual exploitation is Letter of Reprimand to Termination.

Rape. The benchmark sanction for rape is Termination.

Sexual Assault. The benchmark sanction for sexual assault is Termination.

Domestic Violence. Given the potential range of behaviors that constitute Domestic Violence (see definition) sanctions may include any sanction from Letter of Reprimand to Termination.

Dating Violence. Given the potential range of behaviors that constitute Dating Violence (see definition) sanctions may include any sanction from Letter of Reprimand to Termination.

Stalking. Given the potential range of behaviors that constitute Stalking (see definition) sanctions may include any sanction from Letter of Reprimand to Termination.

Interpersonal Violence- Other. Sanctions for an employee who is found responsible for other Interpersonal Violence may range from Letter of Reprimand to Termination.

A written report of the Hearing Panel's findings and determination of sanctions is recorded and signed by all members of the Hearing Panel. No minority opinion will be recorded, nor will dissenting members be noted or identified.

This report is then delivered by the Chair of the Hearing Panel to the Affirmative Action Officer. The Affirmative Action Officer then notifies the official(s) responsible for implementing the Hearing Panel's decision, the Complainant, and the Respondent.

Members of the Hearing Panel also receive a copy of this report with the stipulation that any written documentation remain confidential for use only in connection with the duties of a member of the Hearing Panel.

The Hearing Panel's findings and sanctions are subject to an appeal by either party (Section 5.10 Appeals). If neither the Complainant nor the Respondent submits a written request for an appeal with the University President or designee within five business days after the decision is

Case: 1:23-cv-00066-MWM Doc #: 1-4 Filed: 02/03/23 Page: 76 of 80 PAGEID #: 125

delivered by the Affirmative Action Officer under 12.9.7, the Panel's findings and sanctions shall be final and binding.

## 5.9.11. Notification of Outcome

In cases of Interpersonal Violence, the Affirmative Action Officer will provide the Complainant and Respondent simultaneous written notification of the outcome of the hearing.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.10 Appeal

# 5.10 APPEAL

### 5.10.1. Time for Filing a Request for an Appeal

To appeal any Hearing Panel decision, a request for appeal must be filed with the President or their designee's office by the Complainant or Respondent within five business days after the date the Affirmative Action Officer delivers the Hearing Panel's decision to the appropriate individuals.

### 5.10.2. Appeals

The Complainant and Respondent may request an appeal of the Hearing Panel's findings and/or sanctions. Requests for appeal will be granted only for the following reasons:

- There was a denial of the elements of a fair hearing.
- There was insufficient evidence to establish responsibility for the alleged harassment.
- The sanctions imposed can be shown to be arbitrary or capricious.
- There is new information to present that was not available at the time of the hearing, and that may have a bearing on the Hearing Panel's decision or sanctions.

Requests for appeal in Title IX Sexual Harassment matters will be granted only for reasons found in HCAP 4.7.1.5 Title IX Sexual Harassment Appeals.

The same relevancy criteria will apply in the appeal process as applied in the hearing process.

The request for appeal must state the reason(s) the appeal should be accepted and provide specific details or an explanation to support each reason. Any request for an appeal will be denied that fails to explain why one of these four reasons justifies the appeal.

The recording of the original hearing is for the sole use of the University, though it may be used by either party during an appeal. Any use by a party is limited to listening to the tape recording. The tape recording may not be removed from the Xavier campus, and it may only be reproduced by the University for University purposes.

Within seven business days after the request for appeal is filed, the President or designee will determine whether the request will be accepted or denied. Within three business days of

making the determination, the President or designee will notify the Complainant, Respondent, Affirmative Action Officer, and the Hearing Panel Chair of their decision to accept or deny the request for appeal. If the request for appeal is denied then the decision of and any sanction imposed by the Hearing Panel shall be final and binding.

If a request for appeal is granted, both the Complainant and Respondent will have the opportunity to submit written statements to the President or designee, within a reasonable time to be determined by the President or designee. The review will be confined to these written arguments and the evidence that was presented to the Hearing Panel, except for requests that are granted because new information is available that was not available at the time of the hearing.

Requests for appeal that are granted, in whole or in part, because new information is available will be remanded by the President or designee to the original Hearing Panel for further proceedings. When the President or designee grants a request for appeal for any other reason, they shall have the power to affirm, reverse, or modify the decision and/or the sanction imposed, or to remand the matter to the original Hearing Panel.

Within ten business days after the time expires for receiving written arguments pursuant to section 5.10.2, the President or designee shall review the matter and either remand, affirm, reverse, or modify the decision and/or sanction. Within three business days the President shall provide written notice of their decision to the Affirmative Action Officer and the Hearing Panel Chair. The Affirmative Action Officer will notify the Complainant and Respondent of the President's decision within two business days of receiving the President's decision, including the information that all decisions by the President or designee regarding an appeal are final.

When the President or designee remands a matter to the original Hearing Panel, the President or designee shall provide to the Hearing Panel a copy of the written request for appeal and any written arguments submitted pursuant to section 5.10.2. In reviewing the matter, the Panel shall consider only the new evidence or issues upon which the request for appeal was granted. Within ten business days after the matter is remanded, the original Hearing Panel shall review the matter and either affirm, reverse, or modify its original decision and/or sanction. Within three business days the Hearing Panel Chair shall provide written notice of the Hearing Panel's decision to the Affirmative Action Office. Within two business days after receipt the Affirmative Action Office shall deliver the decision in writing to the Complainant, Respondent, and the President or designee, including the information that all decisions by the Hearing Panel upon remand will be reviewed by the President or designee. The President or designee may approve or modify the Hearing Panel's decision upon remand and that approval or modification will be final and binding. If the President modifies the Hearing Panel decision

they will notify the Affirmative Action Officer within two business days of making that modification. The Affirmative Action Officer will notify in writing the Complainant, Respondent, and Hearing Panel members of the President's modification within two business days of receipt, with the information that the President's decisions are final and binding.



Xavier Home (/) > HCAP (../index) > 5. Harassment Procedures (index) > 5.11 Implementation of Hearing Panel's Decision

# 5.11 IMPLEMENTATION OF HEARING PANEL'S DECISION

In all cases in which a Hearing Panel finds that the Respondent violated the University's HCAP, the decision and sanctions of the Hearing Panel will be implemented by the official responsible for the Respondent:

- In cases in which the Respondent is a member of the faculty, the responsible official is the Dean of the school to which the respondent serves, as the immediate supervisor.
- In cases in which the Respondent is a non-faculty staff member, the responsible official is the appropriate Senior Executive Team member or designee.
- In cases in which the Respondent is not otherwise defined, the responsible official is the immediate Supervisor in consultation with their department head or dean.