**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRUCE ERIKSON,** | : | **Case No. 1:23-CV-00066-MWM** |
| | : | |
| Plaintiff, | : | **Judge Matthew W. McFarland** |
| | : | |
| v. | : | **Magistrate Stephanie K. Bowman** |
| | : | |
| **XAVIER UNIVERSITY, et al.,** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF BRUCE ERIKSON'S RESPONSE IN OPPOSITION TO DEFENDANT XAVIER UNIVERSITY'S MOTION TO DISMISS**

## I.   INTRODUCTION

Defendant Xavier University requests that the Court dismiss Plaintiff Bruce Erikson's discrimination claims arising under federal law because: (1) Title VII preempts Erikson's Title IX claim; (2) Erikson has failed to sufficiently plead a discrimination claim under Title VII; and (3) Erikson has failed to sufficiently plead a discrimination claim under Title IX.  As fully set forth below, however, there is no preemption issue and Erikson's Complaint alleges facts sufficient to support a plausible claim that Xavier's decision to terminate his tenured employment was because of his gender in violation of both Title VII and Title IX.  Under these circumstances, Erikson respectfully requests that the Court deny Xavier's Motion to Dismiss in its entirety.

## II.   LAW AND ANALYSIS

**A.  Legal Standard.**

A motion to dismiss filed pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." *Am. Power, LLC v. Harris,* No. 3:17-cv-347, 2021 WL 2952782, at *1 (S.D.

Ohio July 14, 2021). In deciding such a motion, the Court must accept all allegations of material fact as true and construe them in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 US. 544, 554-55 (2007). "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." *Enable Com., Inc. v. Standard Reg. Co.*, No. 3:09-cv-328, 2009 WL 4283232, at *1 (S.D. Ohio Nov. 30, 2009). Consequently, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Brown v. Chambers-Smith*, No. 2:22-cfv-2469, 2023 WL 1967514, *3 (S.D. Ohio Feb. 13, 2023).

**B. Erikson's Title IX gender discrimination claim is not preempted by Title VII.**

Xavier argues that "because Title IX was not intended to enable employees of educational institutions complaining of gender discrimination or sex-based retaliation to bypass the remedial administrative scheme Congress established in Title VII" this Court should "join the Fifth and Seventh Circuits in finding that…Plaintiff's Title IX employment discrimination claim is preempted by Title VII." (Doc. 8, MTD at PageID# 165). But because there is no basis in Sixth Circuit jurisprudence to adopt Xavier's preemption argument, Erikson respectfully requests that the Court permit his Title IX claim to be adjudicated on the merits.

Admittedly, unlike the First, Third, Fourth and Eighth Circuits which have expressly determined that Title VII does not preempt Title IX retaliation claims arising in the employment context, the Sixth Circuit has not had opportunity to directly decide the issue. However, on each of the three occasions it has addressed an argument like Xavier's, the Court has found either: (1) there was no preemption or (2) the issue was not ripe for

2

review. Indeed, the Sixth Circuit has never indicated in any way, shape, or form that it might find in favor of preemption if directly confronted with the issue.

The Court first addressed preemption in *Ivan v. Kent State Univ.*, 92 F.3d 1185 (6th Cir. 1996), an appeal from a grant of summary judgment on a clinical psychologist's Title VII and Title IX discrimination claims. Although Kent State did not raise the issue of preemption on appeal, the Court explained in a footnote that by adopting the *McDonnell Douglas* burden-shifting framework to analyze the psychologist's Title IX employment discrimination claim, it "overrules the conclusion reached by the district court in *Wedding v. University of Toledo*[1], 862 F.Supp. 201, 203 (N.D. Ohio 1994) that Title VII preempts an individual's private remedy under Title IX." *Id.* at Fn. 10.

Three years later, in *Weaver v. Ohio State Univ.*, 194 F.3d 1315 (6th Cir. 1999), the court declined to make any further statement on the issue but noted its opinion in *Ivan*:

> We are not unmindful of the district court's invitation to revisit the question of whether the private right of action created by Congress in Title VII preempts any private right of action that might otherwise exist under Title IX—compare *Wedding v. University of Toledo*, 862 F.Supp. 201 (N.D. Ohio 1994), where this question was answered "yes," with *Ivan v. Kent State University*, 92 F.3d 1185, 1996 WL 422496 (6th Cir. July 26, 1996) (unpublished), where it was answered "no"—but the parties in the case at bar agreed at oral argument that the answer makes no practical difference here.

The Sixth Circuit addressed preemption for a final time in *Arceneaux v. Vanderbilt Univ.*, 25 F' App'x 345, 346-47 (6th Cir. 2001), in which it explained that the defendant

---

[1] *Wedding,* an opinion Xavier cites in its Motion to Dismiss, was a Northern District of Ohio case decided two years prior to *Ivan* which dismissed a university employee's sex and age discrimination claims brought under Title IX because "this Court presumes Title VII preempts Title IX when employment discrimination is at issue." *Wedding*, 862 F.Supp. at 204.

3

university had conceded its preemption argument in light of *Ivan's* "holding that Title IX creates a private cause of action for employment discrimination and expressly overrul[ed] *Wedding v. Univ. of Toledo*, which held that Title VII preempts an individual's private remedy under Title IX." (internal citations omitted).

In light of the Sixth Circuit's position on preemption, this Court has consistently permitted plaintiffs to bring individual discrimination and retaliation claims arising out of their employment under Title IX, either alone or in tandem with Title VII claims. *See, e.g.*, *Kessling v. Ohio State Univ.*, No. 2:20-cv-1719, 2022 WL 17092250, at *17 (S.D. Ohio Nov. 21, 2022) (Denying summary judgment with respect to oral surgeon's claims under both Title VII and Title IX against OSU's College of Dentistry); *Meng Huang v. Ohio State Univ.*, No. 2:19-cv-1976, 2020 WL 531935, at *12 (S.D. Ohio Feb. 3, 2020) (allowing tenured professor's claims under both Title VII and Title IX to survive motion to dismiss); *Waters v. Drake*, 105 F. Supp. 3d 780, 805 (S.D. Ohio 2015) (denying university's motion to dismiss male marching band director's reverse discrimination claim under Title IX); *Finch v. Xavier Univ.*, 689 F.Supp.2d 955, 965 (S.D. Ohio) (denying summary judgment with respect to former professor's discrimination claims under both Title VII and Title IX).

This Court, as it has done in the past, should continue to follow *Ivan* and allow Erikson to pursue his gender discrimination claim under both Title VII and Title IX. Under these circumstances and in light of existing precedent, this Court should reject Xavier's preemption argument and deny its Motion to Dismiss.

**C. Erikson has adequately plead a Title VII gender discrimination claim.**

According to Xavier, Erikson fails to state a claim for Title VII gender discrimination because: (1) "he has not alleged facts evidencing that Defendant

4

discriminates against the majority" and/or (2) "that a 'similarly situated', non-protected employee was treated more favorably." (Doc. 8, MTD at PageID# 167). In other words, Xavier argues that because Erikson did not plead a prima facie case of "reverse discrimination" in his Complaint, his Title VII claim should be dismissed on the pleadings. This is not the law.

First, whether the heightened standard for establishing a prima facie case of discrimination in "reverse discrimination" cases is permissible under Title VII is an open question. The statute states that it is an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This language does not state that it applies solely to historically underrepresented groups or minorities but rather mandates a blanket prohibition against gender discrimination in any form. As the Supreme Court has explained:

> If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee—put differently, if changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred. Title VII's message is "simple but momentous": An individual employee's sex is "not relevant to the selection, evaluation, or compensation of employees."

*Bostock v. Clayton Cnty., Georgia,* 207 L.Ed.2d 218, 140 S. Ct. 1731, 1741 (2020).

Moreover, "[T]he Sixth Circuit has previously said that the 'background circumstances' prong only required of 'reverse discrimination' plaintiffs 'may impermissibly impose a heightened pleading standard on majority victims of discrimination.'" *Burrows v. Fuyao Glass America, Inc.*, No. 3:17-cv-00186-TMR, 2017 WL 6262189, at *9 (S.D. Ohio Dec. 8, 2017)(citing *Zambetti v. Cuyahoga Cmty. College,*

5

314 F.3d 249, 257 (6th Cir. 2002)). And the Court has 'serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." *Id., citing Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n.7 (6th Cir. 1994). Accordingly, Erikson submits that the Court should decline to apply a different standard to his gender discrimination claim simply because he is man, and instead focus on the actual issue: whether he was found guilty of violating Xavier University's HCAP Section 4.2.2.5-Interpersonal Violence-Rape and terminated from his tenured professorship because of his gender.

Second, and perhaps more important at this early stage of the litigation, Erikson need not plead a prima facie case of discrimination to state a claim under Title VII. *Waters v. Drake*, 105 F.Supp. 780, 804 (S.D. OH 2015) ("The Supreme Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standards that plaintiffs must satisfy in order to survive a motion to dismiss"). "To the contrary, the Supreme Court has held that plaintiffs are not required 'to *plead* facts establishing a prima facie case,' given that the *McDonnell Douglas* framework 'is an evidentiary standard, not a pleading requirement.'" *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1060 (6th Cir. 2022)[2](citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-511, 122 S.Ct. 992, 152 L.E.2d 1 (2002) ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases")). Instead, to state a claim for relief, Erikson need only plead sufficient facts from which the Court could

---

[2] In *Charlton-Perkins*, a white, male research scientist alleged that he was unlawfully denied a tenure-track position at the University of Cincinnati because of his gender. 35 F.4th at 1056.

plausibly conclude that he was discriminated against on the basis of gender. *Charlton-Perkins*, 35 F.4th at 1060-1061; *see also Crowder v. Railcrew Xpress*, 557 Fed.Appx. 487 (6th Cir. 2014) ("The correct standard is the 'plausibility' standard in *Twombly* and *Iqbal*). "Consequently, so long as a plaintiff's complaint provides a defendant with fair notice of the basis of his claims and an adequate factual basis for those claims, a plaintiff's claim of employment discrimination will survive a motion to dismiss." *Waters*, 105 F.Supp.3d at 804.

Here, Erikson clearly carried his burden to set forth facts to plead a "plausible" claim that his gender played a role in Xavier's decision to find him guilty of violating HCAP Section 4.2.2.5-Interpersonal Violence-Rape and terminate his tenured employment. Indeed, his Complaint contains the following allegations tending to show that he was discriminated against on the basis of his gender:

- In response to Witt's allegation that Erikson had raped her, another faculty member in Xavier's Art Department "urged Witt to report the allegation but warned her that Erikson is 'white, and male, and got privilege on his side.'" (Doc. No. 1, Complaint at PageID# 4, ¶ 14).

- During the course of his hearing, "the panel embarked on a moral tirade against Erikson for, as a male, having sexual intercourse without using a condom" and "ignored testimony that Witt had consented to the sexual activity." (Doc. 1, Complaint at PageID# 6, ¶ 20).

- "On July 22,2022, the hearing panel issued a written decision finding that Erikson was responsible for raping Witt and recommended terminating his employment from the University and attributing the rape to an 'imbalance of power' between Witt and Erikson stemming from the fact that Erikson is a male whose position in life and at the University seemingly granted him status and power which allowed him to overwhelm Witt's ability to resist his actions." (Doc. 1, Complaint at PageID# 6, ¶ 21).

- Erikson filed an appeal of the decision to the President of Xavier, Colleen Hyncz, citing the numerous procedural irregularities and gender discrimination that had permeated the investigation and hearing concerning Witt's false allegations of rape. (Doc. 1, Complaint at PageID# 6-7, ¶ 21).

7

In light of these factual allegations, this case is clearly distinguishable from those relied upon by Xavier in its Motion to Dismiss. For instance, in *Han v. Univ. of Dayton*, 541 F. App'x 622, 62-27 (6th Cir. 2013), the Sixth Circuit explained that a law professor's discrimination claim did not meet the plausibility standard because his Complaint contained absolutely no allegations connecting the adverse action to his race or gender:

> Certainly, Plaintiff pleads his own race and gender, and alleges that, as a result of his race and gender, he was given a bad evaluation by the PRT committee and then ultimately fired. However, Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race or gender factored into the University's decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment.

Similarly, in *Wilson v. CC Holdings Restaurant Group,* No. 1:19-cv-872, 2020 WL 2734769, at*3 (S.D. Ohio May 26, 2020), this Court dismissed a race discrimination claim because "the complaint fail[ed] to provide any connection between plaintiff's race and his termination." Finally, in *Masaebi v. Arby's Corp.*, No. 2:19-cv-5271, 2020 WL 1275724, at*4 (S.D. Ohio Mar. 17, 2020), this Court dismissed a national origin discrimination claim finding that "the complaint is devoid of any facts which could produce an inference that Defendant unlawfully considered Plaintiff's national origin when conducting her training, administering her tests, or terminating her."

Lastly, the Court should reject Xavier's argument that Erikson's failure to include an allegation that similarly situated female professors were treated more favorably is fatal to his claim. Indeed, it would be all but impossible prior to discovery for Erikson to assert that he was treated differently than similarly situated female professors. In addition to the fact that there may or may not be other professors charged with similar allegations,

8

such proceedings are largely confidential and Erikson would have no way of knowing the substance or outcome of those charges and/or proceedings absent discovery.

Moreover, in addition to the fact that Erikson need not plead a prima facie case in his Complaint to survive a motion to dismiss, the Supreme Court has emphasized that the elements necessary to establish a prima facie case of discrimination are not inflexible. Rather, "[the] facts necessarily will vary in Title VII cases, and the satisfaction (of the four elements) of the prima facie proof required…is not necessarily applicable in every respect in different factual situations." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, n. 13, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see also U.S. Postal Serv. Bd. of Governors v. Akins*, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983) ("the *prima facie* case method established in *McDonnell* was never intended to be rigid, mechanized, or ritualistic…rather, it is merely a sensible, orderly way to evaluate evidence in light of common experience as it bears on critical questions of discrimination"). As a result, a plaintiff may generally satisfy his burden at the prima facie stage upon a showing of "action taken by the employer from which one can infer, if such action remains unexplained, that it is more likely than not that such actions were based on a discriminatory criterion…". *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576, 98 S. Ct. 2943, 2949, 57 L.Ed. 2d 957 (1978); *see also Shah v. Gen. Elec. Co.*, 816 F.2d 264, 268 (6th Cir. 1987) ("the central inquiry in evaluating whether the plaintiff has established his initial burden

9

is whether it is sufficient to create an inference [of discrimination]"). Erikson submits that he has made such a showing in his Complaint.

Thus, accepting all allegations of material fact as true and construing them in the light most favorable to Erikson as required by Fed.R.Civ.P. 12, Erikson has clearly carried his burden to set forth facts creating a plausible claim that his gender played a role in Xavier University's decision to find him guilty of violating HCAP Section 4.2.2.5-Interpersonal Violence-Rape and terminate his tenured employment. Under these circumstances, Erikson respectfully requests that the Court deny Xavier's Motion to Dismiss with respect to his Title VII gender discrimination claim.

**D. Erikson has adequately plead a Title IX gender discrimination claim.**

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance..." 20 U.S.C. § 1681(a). An individual "attacking a university disciplinary proceeding on grounds of gender bias" under Title IX may do so by asserting one or more of four theories: (1) erroneous outcome; (2) selective enforcement; (3) deliberate indifference; and/or (4) archaic assumptions. *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018). In his Complaint, Erikson alleges that "Xavier's finding that Erikson was responsible for raping Witt and its decision to terminate his employment constituted an erroneous outcome caused by procedural irregularities by and the unlawful actions of Xavier motivated by consideration of Erikson's gender in violation of Title IX." (Doc. 1, Complaint at PageID# 8, ¶ 32).

To plead an erroneous-outcome claim, a plaintiff must allege: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized…causal connection between the flawed outcome and gender bias. *Doe v. Miami Univ.*, 882 F.3d at 591 (citing *Doe v. Cummins*, 662 Fed. App'x 437, 452 (6th Cir. 2016)). In its Motion to Dismiss, Xavier concedes that Erikson has alleged procedural deficiencies associated with the investigation, hearing, and resolution of the allegation that he raped Ms. Witt. (Doc. 8, MTD at PageID# 171). However, the university contends that his Title IX claim should nevertheless be dismissed because Erikson did not allege any causal connection between the flawed outcome and gender bias. (*Id.*). This argument should be rejected for several reasons.

First, the Sixth Circuit has previously found that "clear procedural irregularities" in a college's response to allegations of sexual misconduct "will permit a plausible inference of sex discrimination." *Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2020). In his Complaint, Erikson alleged that "Erikson pointed out that Xavier's investigation breached the terms of its own HCAP policy because: (1) at the time of the alleged incident, Witt was not a student or an employee, nor did she have any other relationship with Xavier; (2) the alleged incident did not occur on Xavier property or during an event associated with the University; (3) Witt was not a "visitor" to Xavier at the time of the alleged incident; and (4) in any event, the alleged incident occurred outside the HCAP's two-year statute of limitations for filing complaints. Despite these procedural irregularities, Xavier knowingly disregarded its own policies and proceeded with the investigation." (Doc. 1, Complaint at PageID# 5, ¶ 17). Additionally, Erickson alleges that during his hearing Xavier further violated HCAP policies by permitting witnesses to make vague references to alleged misconduct by Erikson outside the scope of Witt's complaint.

11

(*Id.* at PageID# 6, ¶ 19). Pursuant to *Doe v. Oberlin*, these clear procedural irregularities alone may permit a plausible inference of sex discrimination.

Moreover, and as fully set forth above, numerous references to Erikson's gender were made throughout the proceedings which eventually resulted in the termination of his tenured professorship. Although Xavier presents various arguments regarding why the Court should not consider these facts as indicia of a causal connection, at the motion to dismiss stage the court must construe all allegations of material fact in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554-55 (2007). Moreover, the university's arguments are baseless. For instance, Xavier claims Professor Phelps' comments should be discounted because "he is not alleged to have been a member of the hearing panel and is not alleged to have been involved as a decision-maker in the HCAP process." (Doc. 8, MTD at PageID# 173). However, the Complaint alleges that Prof. Phelps was Chairperson of the Art Department from 2012-2019. (Doc. 1, Complaint at PageID# 3, ¶ 9) He also served as a witness during the HCAP hearing.[3]

Xavier also argues that "the failure to use a condom is not an inherently gender-based issue." (Doc. 8, MTD at PageID#173). However, the Complaint clearly alleges that "the panel embarked on a moral tirade against Erikson for, **as a male**, having sexual intercourse without a condom." (Doc. 1, Complaint at PageID# 6, ¶ 20) (emphasis added). That allegation makes clear, by implication, that the panel did not chastise Ms. Witt for the same conduct, a fact which establishes it viewed and treated Erikson differently because of his gender. Moreover, the cases Xavier cites attempting to equate the panel's "moral tirade" over male condom usage with the use of leading questions, "cross-

---

[3] Plaintiff will amend the Complaint to add that fact if the Court deems it necessary.

examination like" questions, remarks in the context of criminal trials, and remarks expressing distaste for sex with unconscious partners are simply inapplicable. The panel's comments to Erikson were made expressly in reference to his gender and thus are evidence of a causal connection between the panel's flawed outcome and gender bias.

Finally, Erikson's Complaint states that the University attributed "…the rape to an 'imbalance of power' between Witt and Erikson stemming from the fact that Erikson is a male…". This is a clear allegation connecting the flawed outcome with Erikson's gender. Although Xavier urges the Court to interpret this allegation differently, a motion to dismiss is not the proper judicial vehicle for doing so.

In sum, Erikson has sufficiently alleged (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding as well as (2) a particularized…causal connection between the flawed outcome and gender bias and has thus sufficiently plead an erroneous outcome claim under Title IX. Under these circumstances, Erikson respectfully requests that the Court deny Xavier's Motion to Dismiss with respect to his Title IX discrimination claim.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Bruce Erikson respectfully requests that the Court deny Defendant Xavier University's Motion to Dismiss in its entirety.

Respectfully submitted,

        MEZIBOV BUTLER

        /s/Marc D. Mezibov
        Marc D. Mezibov (OH No. 0019316)
        Susan L. Butler (OH No. 0082811)
        615 Elsinore Place, Suite 105
        Cincinnati, OH 45202
        Phone: 513.621.8800
        Fax: 51.3621.8833
        mmezibov@mezibov.com
        sbutler@mezibov.com

        *Attorneys for Plaintiff Bruce Erikson*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served via the ECF filing system to all parties of record on May 5, 2023.

        /s/Marc D. Mezibov
        Marc D. Mezibov (OH No. 0019316)