**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| BRUCE ERIKSON, | : | Case No. 1:23-cv-66 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| XAVIER UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | |

---

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS (Docs. 8 & 13)

---

This matter is before the Court on Defendant Xavier University's Motion to Dismiss (Doc. 8) and Defendant Eva Witt's Motion to Dismiss (Doc. 13). Both motions have been fully briefed. (*See* Docs. 14-17.) Thus, the matters are ripe for the Court's review. For the following reasons, Defendant Xavier's Motion to Dismiss (Doc. 8) and Defendant Witt's Motion to Dismiss (Doc. 13) are both **DENIED**.

### FACTS AS ALLEGED

Plaintiff Bruce Erikson was a tenured Associate Professor of Art for Defendant Xavier University for nearly a decade until his termination in October 2022. (Compl., Doc. 1, ¶¶ 6, 11.) This case primarily revolves around the events leading up to Plaintiff's termination: a former student's allegation that Plaintiff had raped her and the investigative and administrative actions that Xavier took in response to her formal complaint.

Plaintiff began speaking with a former student, Defendant Eva Marie Witt, during the latter half of 2019. (Compl., Doc. 1, ¶ 12.) Although Witt had graduated from Xavier in 2013, she was not a Xavier employee and had no other relationship with Xavier. (*Id.*) After communicating over several months and meeting on multiple social occasions, Witt suggested that she spend the night at Plaintiff's house on December 31, 2019. (*Id.* at ¶¶ 12-13.) That night, Witt visited Plaintiff at his house and the two had sex. (*Id.* at ¶ 13.) Plaintiff alleges that the sex was consensual. (*Id.*)

A little over two years later, on February 5, 2022, Witt contacted Defendant Kelly Phelps—a professor at Xavier who chaired the Department of Art from 2012 through 2019. (Compl., Doc. 1, ¶¶ 9, 14.) Witt told Phelps that she believed Plaintiff had raped her. (*Id.* at ¶ 14.) Phelps "urged Witt to report the allegation but warned her that [Plaintiff] is 'white, and male, [and] got privilege on his side.'" (*Id.*)

On February 24, 2022, Plaintiff was notified that Witt had filed a formal complaint with Xavier alleging that Plaintiff had violated Xavier's policy by raping her on December 31, 2019.[1] (Compl., Doc. 1, ¶ 15.) Plaintiff "vehemently denied" the accusation. (*Id.* at ¶ 16.) Additionally, Plaintiff informed Xavier that any investigation into Witt's formal complaint would breach the terms of Xavier's Harassment Code and Accountability Procedures ("HCAP") for several reasons: "(1) at the time of the incident, Witt was not a student or an employee, nor did she have any other relationship with Xavier; (2) the

---

[1] The Complaint states that Witt's formal complaint pertained to the events on December 31, 2022, but this appears to be a typographical error as the date of the alleged rape is December 31, 2019. (*See* Compl., Doc. 1, ¶¶ 13, 15.)

alleged incident did not occur on Xavier property or during an event associated with the University; (3) Witt was not a 'visitor' to Xavier at the time of the alleged incident; and (4) in any event, the alleged incident occurred outside the HCAP's two-year statute of limitations for filing complaints." (*Id.* at ¶ 17.)

Xavier held an HCAP hearing regarding the rape allegations on July 22, 2022 and July 25, 2022. (Compl., Doc. 1, ¶ 20.) During the hearing, "the panel embarked on a moral tirade against [Plaintiff] for, as a male, having sexual intercourse without using a condom." (*Id.*) The panel allowed witnesses to make vague references to allegations of Plaintiff's conduct beyond the scope of Witt's complaint and permitted hearsay testimony by witnesses without personal knowledge. (*Id.*) Moreover, the panel ignored testimony that Witt had consented to the sexual activity. (*Id.*) The panel ultimately found Plaintiff responsible for raping Witt and recommended terminating him from Xavier. (*Id.* at ¶ 21.) The panel attributed the rape to an "imbalance of power" between Plaintiff and Witt, which stemmed from the fact that Plaintiff is a male whose position in life and at the University seemingly granted him status and power. (*Id.*) This power allowed Plaintiff to overwhelm Witt's ability to resist his actions. (*Id.*) Xavier terminated Plaintiff in October 2022. (*Id.* at ¶ 6.)

Plaintiff now brings six claims in his Complaint. (Compl., Doc. 1, ¶¶ 24-42.) Only three are relevant for resolving the motions before the Court. First, Plaintiff brings a defamation claim against Witt for making the allegedly false statement that Plaintiff raped her. (Compl., Doc. 1, ¶¶ 24-26.) Turning to Xavier, Plaintiff brings Title IX and Title VII claims for gender discrimination. Plaintiff alleges that "Xavier's actions and/or

omissions surrounding the investigation and hearing of Witt's false allegations of rape, including numerous procedural irregularities, were attributed to gender bias in violation of Title IX" and that this caused an "erroneous outcome." (*Id.* at ¶¶ 31-32.) Finally, Plaintiff alleges that "[Xavier's] actions and/or omissions surrounding the investigation and hearing of Witt's false allegation of rape, including the decision to terminate [Plaintiff's] employment, constitute gender discrimination in violation of Title VII." (*Id.* at ¶ 35.)

## LAW

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

## ANALYSIS

The Court will begin with Xavier's Motion to Dismiss (Doc. 8), which seeks to dismiss Plaintiff's Title VII and Title IX claims and to remand this matter to state court.

Then, the Court will move to Witt's Motion to Dismiss (Doc. 13), which seeks to dismiss Plaintiff's defamation claim.

## I.     Xavier's Motion to Dismiss Plaintiff's Title VII and Title IX Claims

### A.   Plaintiff's Title VII Claim

Xavier argues that Plaintiff's Title VII claim should be dismissed because Plaintiff has failed to state a claim for gender discrimination. (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 166-69.) Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1).

The parties disagree over the proper standard for establishing a prima facie case in this matter. Title VII discrimination cases are generally subject to the *McDonnell Douglas* framework, in which a plaintiff may set forth a prima facie case of discrimination by showing that "(1) he is a member of a protected class; (2) was qualified for the job; (3) [] suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (quotation omitted). In a reverse discrimination case, such as when a man brings a claim of gender discrimination, the first and fourth prongs are modified: a plaintiff must also show "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority" and "that the employer treated differently employees who were similarly situated but not members of the protected

group." *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quotations omitted).

Plaintiff argues that the standard for a prima facie case of reverse discrimination remains an "open question." (*See* Plaintiff's Response to Xavier, Doc. 14, Pg. ID 213.) As support, Plaintiff cites to the following Sixth Circuit language: "we note that the 'background circumstances' prong, only required of 'reverse discrimination' plaintiffs, may impermissibly impose a heightened pleading standard on majority victims of discrimination." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002). Despite this hesitation, however, the Sixth Circuit has never overruled the "background circumstances" requirement and has continued to apply it in recent years. *See, e.g., Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 825 (6th Cir. 2023).

Although the heightened standard may be the proper standard for Plaintiff to demonstrate a prima facie case of reverse discrimination, it is a premature standard to apply at this stage of litigation. As the Supreme Court has held, "[t]he prima facie case under *McDonnell Douglas* [] is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). The Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 534 U.S. at 511. "Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Id.* at 512.

6

Rather, Title VII claims are subject to the well-traveled pleading requirement of Federal Rule of Civil Procedure 8(a)(2), which is met as long as the plaintiff sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007). As this Court recently framed the inquiry within the Title VII context, a plaintiff can survive a motion to dismiss if he "present[s] facts that, based on the Court's common sense and judicial experience, somehow *otherwise* show that he has a plausible claim of discrimination"—even if he does not successfully plead plausibility under the *McDonnell Douglas* framework. *Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826, 834 (S.D. Ohio 2022). "[S]o long as a plaintiff's complaint provides a defendant with fair notice of the basis [of his] claims, and an adequate factual basis for those claims, a plaintiff's claim of employment discrimination will survive a motion to dismiss." *Waters v. Drake*, 105 F. Supp. 3d 780, 804 (S.D. Ohio 2015) (cleaned up).

Having determined the applicable standard, the Court turns to the substance of Plaintiff's Title VII claim. Plaintiff alleges that "Xavier University's actions and/or omissions surrounding the investigation and hearing of Witt's false allegations of rape, including the decision to terminate [Plaintiff's] employment, constitute gender discrimination in violation of Title VII." (Compl., Doc. 1, ¶ 35.) In arguing that his claim should proceed, Plaintiff points to three specific allegations in his Complaint to show that Xavier discriminated against him based upon his gender. (*See* Plaintiff's Response to Xavier, Doc. 14, Pg. ID 215.)

First, Plaintiff alleges that Professor Phelps responded to Witt's rape allegation by "urg[ing] Witt to report the allegation but warn[ing] her that [Plaintiff] is 'white, and

7

male, got privilege on his side.'" (Compl., Doc. 1, ¶ 14.) Xavier contends that the Court should not consider this alleged statement because "Phelps is not alleged to have been a member of the hearing panel and is not alleged to have been involved as a decision-maker in the HCAP process." (Xavier's Motion to Dismiss, Doc. 8, Pg. 173.) Plaintiff counters that Phelps was Chairperson of the Art Department from 2012 through 2019. (Plaintiff's Response to Xavier, Doc. 14, Pg. ID 220; Compl., Doc. 1, ¶ 9.) However, these dates do not align with when Witt disclosed her allegation to Phelps in February 2022 or when Xavier held the hearing in July 2022. (*See* Compl., Doc. 1, ¶¶ 14, 20.) And, the Court cannot consider Plaintiff's belated statement that Phelps served as a witness during the hearing since it is not in the Complaint. (Plaintiff's Response to Xavier, Doc. 14, Pg. ID 220.) *See Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp. 3d 1090, 1097 (S.D. Ohio 2022). Because Plaintiff has not alleged a sufficient nexus between Phelps and the alleged discrimination of Xavier, Phelps' statement will not be considered.

Second, Plaintiff alleges that, during his hearing, the panel "embarked on a moral tirade against [Plaintiff] for, as a male, having sexual intercourse without using a condom." (Compl., Doc. 1, ¶ 20.) Xavier argues that this is insufficient to demonstrate gender bias because "[t]he failure to use a condom is not an inherently gender-based issue." (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 173.) But, Plaintiff has alleged that this "moral tirade" was made against him "as a male." (Compl., Doc. 1, ¶ 20.) This specific allegation, which must be accepted as true and construed in the light most favorable to Plaintiff, adds to the plausibility of Plaintiff's discrimination claim.

Third, Plaintiff alleges that the hearing panel attributed "the rape to an 'imbalance of power' between Witt and [Plaintiff] stemming from the fact that [Plaintiff] is a male whose position in life and at the University seemingly granted him status and power which allowed him to overwhelm Witt's ability to resist his actions." (Compl., Doc. 1, ¶ 21.) Xavier contends that such an imbalance of power is "not inherently gender-related" but was relevant to the panel's decision making. (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 174.) But, again, the Court must view this allegation in the light most favorable to Plaintiff. The Court accordingly finds that this specific allegation adds to the plausibility of Plaintiff's discrimination claim.

Despite Xavier offering alternative explanations, Plaintiff's allegations are sufficient to state a claim of gender discrimination under Title VII. "At the pleading stage, [a plaintiff's] allegations need only create the plausible inference of intentional gender discrimination; although alternative non-discriminatory explanations for the defendants' behavior may exist, that possibility does not bar [plaintiff's] access to discovery." *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018); *see also 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013) ("[T]he mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal."); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) ("Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage.").

Several cases cited by Xavier are distinguishable from the case at hand. In *Zickefoose v. Austin*, this Court granted a motion to dismiss a sex discrimination claim

9

because the plaintiff failed to allege the perquisite discriminatory intent. No. 2:22-CV-1935, 2023 WL 155909, at *5-7 (S.D. Ohio Jan. 11, 2023). The plaintiff in that case alleged "only that he is male, that Defendant improperly delayed approval for leave to care for his pregnant wife, that a supervisor stated that 'Plaintiff should live with his life choices including his wife being pregnant . . . ,' and that Plaintiff was inappropriately disciplined." *Id.* at *5. Tellingly, the Court noted that "there [was] nothing in the content of these comments that relate to Plaintiff's sex, sex stereotypes, or masculine norms." *Id.* The same cannot be said for Plaintiff's Complaint.

Xavier also cites to *Han v. University of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013), for the proposition that the Court should dismiss Plaintiff's claims because he failed to allege that similarly situated non-protected professors were treated more favorably. (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 167.) However, in *Han*, the plaintiff alleged no set of facts beyond the conclusory assertions that he was given a poor evaluation and was terminated because he was a man. *Han*, 541 F. App'x at 627. Because the plaintiff proffered an inference unsupported by the alleged facts, the Sixth Circuit affirmed the dismissal. *Id.* Here, in contrast, Plaintiff asks this Court to make an inference that is supportable by the alleged statements concerning Plaintiff's gender. Additionally, as noted above, Plaintiff need not demonstrate a prima facie gender discrimination case at this time. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). For all these reasons, the Court cannot dismiss Plaintiff's Title VII claim against Xavier.

10

## B. Plaintiff's Title IX Claim

Next, Xavier argues that Plaintiff's Title IX claim should be dismissed. (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 163-175.) Xavier first contends that Plaintiff's Title IX claim is preempted by his Title VII claim. (*Id.* at Pg. ID 163-165.) Alternatively, Xavier contends that Plaintiff fails to state a claim for Title IX gender discrimination. (*Id.* at Pg. ID 169-175.) The Court considers each argument in turn.

### i. Preemption

Xavier argues that Plaintiff's Title IX gender discrimination claim is preempted by his Title VII gender discrimination claim. (*See* Xavier's Motion to Dismiss, Doc. 8, Pg. ID 163-165.) There is a circuit split over this precise question. The First, Third, Fourth, and Eighth Circuits allow claims to proceed under both statutes. *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896-97 (1st Cir. 1988); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 563-64 (3d Cir. 2017); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994); *Brine v. Univ. of Iowa*, 90 F.3d 271, 275-76 (8th Cir. 1996). On the other hand, the Fifth and Seventh Circuits have found the preemption argument persuasive. *See Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995); *Waid v. Merrill Area Pub. Schs.*, 91 F. 3d 857, 861-62 (7th Cir. 1996), *rev'd in part on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

In the Sixth Circuit's most direct answer to the preemption question, it overruled the conclusion reached by a district court "that Title VII preempts an individual's private remedy under Title IX." *Ivan v. Kent State Univ.*, 92 F.3d 1185, at *2 n.10 (6th Cir. 1996). However, as the Sixth Circuit placed this language within a footnote of an unpublished

11

opinion, the law on this question "remains unsettled." *Wiler v. Kent State Univ.*, No. 5:20-CV-490, 2021 WL 809350, at *7 (N.D. Ohio Mar. 3, 2021); *see also Goldblum v. Univ. of Cincinnati*, No. 1:19-CV-398, 2019 WL 5307247, at *6 (S.D. Ohio Oct. 21, 2019), *report and recommendation adopted*, 415 F. Supp. 3d 799 (S.D. Ohio 2019) (same).

The Sixth Circuit has only tangentially touched upon the issue since *Ivan*. In *Arceneaux v. Vanderbilt University*, for instance, the preemption question was not squarely before the Sixth Circuit because the defendant—who had argued in its motion for summary judgment that Title VII preempts Title XI—"concede[d] this point on appeal based on [the Sixth Circuit's] unpublished decision in *Ivan*." *Arceneaux v. Vanderbilt Univ.*, 25 F. App'x 345, 346 (6th Cir. 2001). And, while Judge Alice Batchelder wrote a brief concurrence voicing her belief that preemption should apply, the remainder of the panel did not join this concurrence. *Id.* at 349 (Batchelder, J., concurring).

Consequently, district courts around this circuit have looked to *Ivan* in this context. For example, when the Western District of Kentucky recently confronted this question, it denied defendant's Title IX preemption argument "[i]n light of the Sixth Circuit case law." *Mesbah v. Univ. of Louisville*, No. 3:22-CV-567, 2023 WL 6050232, at *17 (W.D. Ky. Sept. 15, 2023); *see also Wiler*, 2021 WL 809350, at *7 ("Notwithstanding questions of *Ivan*'s precedential value, other courts have followed *Ivan* as expressing the view of the Sixth Circuit."). After considering Sixth Circuit case law, the Court concludes that Plaintiff's Title IX claim is not preempted by his Title VII claim.

12

### ii. Failure to State a Claim

The Court now considers Xavier's argument that Plaintiff nevertheless fails to state a claim for Title IX gender discrimination. (*See* Xavier's Motion to Dismiss, Doc. 8. Pg. ID 169-175.) Title IX, in part, provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

A litigant may dispute a university disciplinary proceeding on gender bias grounds under four theories: erroneous outcome, selective enforcement, deliberate indifference, or archaic assumptions. *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (citations omitted). In his Complaint, Plaintiff alleges that "Xavier's finding that [Plaintiff] was responsible for raping Witt and its decision to terminate his employment constituted an erroneous outcome caused by procedural irregularities by and the unlawful actions of Xavier motivated by consideration of [Plaintiff's] gender in violation of Title IX." (Compl., Doc. 1, ¶ 32.) Thus, the erroneous outcome theory is before the Court.

"The gravamen of an erroneous outcome claim is that an 'innocent' person was wrongly found to have committed an offense because of his or her gender." *See Marshall v. Ohio Univ.*, No. 2:15–CV–775, 2015 WL 7254213, at *5 (S.D. Ohio Nov. 17, 2015). "To survive a motion to dismiss under the erroneous-outcome theory, a plaintiff must plead facts sufficient to (1) cast some articulable doubt on the accuracy of the disciplinary proceeding's outcome, and (2) demonstrate a particularized causal connection between

the flawed outcome and gender bias." *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018) (cleaned up).

Turning to the first prong, the burden for a litigant to plead "articulable doubt" is "not heavy" and can typically be satisfied by alleging "particular procedural flaws affecting the proof." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 679 (M.D. Tenn. 2018) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Plaintiff alleges, among other things, that the panel "violated HCAP rules by permitting witnesses to make vague references to alleged misconduct by [Plaintiff] outside the scope of Witt's complaint" and "permitted witnesses to provide hearsay testimony about events and occurrences about which they had no personal knowledge or evidence." (Compl., Doc. 1, ¶ 20.) Plaintiff further alleges that the panel "ignored testimony that Witt had consented to the sexual activity," failed to obtain and consider Witt's medical records, and investigated the incident despite Witt's complaint being filed beyond the two-year statute of limitations. (*Id.* at ¶¶ 17, 19, 20.) Xavier concedes that Plaintiff has alleged numerous procedural deficiencies. (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 171.) And, the Court finds these allegations sufficient to satisfy the first requirement in pleading an erroneous outcome case.

As for the second prong, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (quotation omitted). A plaintiff must allege more. "Causation sufficient to state a Title IX discrimination claim

14

can be shown via 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Id.* (quotation omitted). Additionally, the Sixth Circuit has recognized that clear procedural irregularities in a university's response to sexual misconduct allegations may permit a plausible inference of sex discrimination. *Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2019).

Xavier contends that "Plaintiff has alleged procedural deficiencies, but no specific relation at all to gender." (Xavier's Motion to Dismiss, Doc. 8, Pg. ID 171.) The Court disagrees. Plaintiff sufficiently pled a particularized causal connection between the flawed outcome and gender bias to satisfy the second prong. Specifically, Plaintiff alleged gender-biased statements by pertinent decisionmakers and clear procedural irregularity. The Court examines each in turn.

First, Plaintiff has alleged a causal connection between the flawed outcome and gender bias by including specific statements made by the panel pertaining to gender. Namely, the panel "embarked on a moral tirade against [Plaintiff] for, as a male, having sexual intercourse without using a condom" and attributed "the rape to an 'imbalance of power' between Witt and [Plaintiff] stemming from the fact that [Plaintiff] is a male whose position in life and at the University seemingly granted him status and power." (Compl., Doc. 1, ¶¶ 20, 21.) For the reasons previously detailed, these statements demonstrate a particularized causal connection between the flawed outcome and gender bias at this stage of litigation. *See Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961, 973

(S.D. Ohio 2018) ("[A]llegations of causation necessary to state a Title IX claim can be similar to those sufficient to state a Title VII discrimination claim.").

This case is distinguishable from several of the cases cited by Xavier. In *Sahm v. Miami University*, this Court dismissed a Title IX gender discrimination claim. 110 F. Supp. 3d 774, 780 (S.D. Ohio 2015). But, this Court arrived at that conclusion after noting that the plaintiff had "not alleged that any members of the disciplinary tribunal made statements indicating gender bias." *Id.* at 778. Similarly, in *Pierre v. University of Dayton*, this Court dismissed the claim after finding that the Complaint was devoid of any allegations of comments from any university officials related to gender bias. No. 3:15-CV-362, 2017 WL 1134510, at *11 (S.D. Ohio Mar. 27, 2017). That is not the case here.

Second, Plaintiff's allegations of clear procedural irregularities by Xavier further support a plausible inference of sex discrimination. *See Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2019). Plaintiff alleges that Xavier's investigation breached the terms of the HCAP policy because "(1) at the time of the alleged incident, Witt was not a student or an employee, nor did she have any other relationship with Xavier; (2) the alleged incident did not occur on Xavier property or during an event associated with the University; (3) Witt was not a 'visitor' to Xavier at the time of the alleged incident; and (4) in any event, the alleged incident occurred outside the HCAP's two-year statute of limitation for filing complaints." (Compl., Doc. 1, ¶ 17.) Simply put, Plaintiff alleges that the investigation itself was outside the scope of HCAP and thus constituted a procedural irregularity.

Xavier counters that these allegations do not constitute clear procedural irregularities. (Xavier's Reply, Doc. 16, Pg. ID 240.) The HCAP contains a two-year

16

limitation for filing complaints but provides that "[t]he Affirmative Action Officer may grant a reasonable extension of any time period established in these guidelines, except where otherwise noted." (HCAP, Doc. 1-4, Pg. ID 112.) The alleged rape occurred on December 31, 2019, and Plaintiff received notification of Witt's complaint on February 24, 2022. (Compl., Doc. 1, ¶¶ 13, 15.) So, Xavier's extension beyond the statute of limitations was approximately two months. While the HCAP recognizes that complaints over the two-year mark may cause difficulty in investigating and adjudicating the claim, "reasonable extensions" are permitted under the procedures. (HCAP, Doc. 1-4, Pg. ID 112-13.) This delay does not, by itself, constitute a clear procedural irregularity but remains relevant.

Turning to the HCAP's scope, the "HCAP applies when an employee . . . is accused of violating Xavier's harassment policies by a student, employee, contracted employee, or third party (i.e., visitor to campus)." (HCAP, Doc. 1-4, Pg. ID 51.) Because the "visitor to campus" phrase is preceded by "i.e.," this suggests that the scope of third parties in this clause is limited to visitors to campus. *See* i.e., Merriam-Webster, https://www.merriam-webster.com/dictionary/i.e. (defining "i.e." as "that is"); *cf.* e.g., Merriam-Webster, https://www.merriam-webster.com/dictionary/e.g. (defining "e.g." as "for example"). Courts may look to a phrase following "i.e." as limiting the scope of the preceding term. *See, e.g., Choon's Design Inc. v. Tristar Prod., Inc.*, No. 14-10848, 2018 WL 632107, at *5 (E.D. Mich. Jan. 30, 2018) (using the phrase "i.e., closed loops" narrowed the preceding term "continuous looped structures"). Witt was not a current student or employee of Xavier, and the alleged rape did not occur on campus or at a university-

17

sponsored event. (Compl., Doc. 1, ¶ 17.) The HCAP language accordingly supports Plaintiff's allegation—at least at this point of litigation—that the investigation into Witt's complaint was a clear procedural irregularity.

Plaintiff has sufficiently pled a Title IX claim for gender discrimination pursuant to the erroneous outcome theory. By alleging circumstances that cast articulable doubt on the panel's finding, Plaintiff has satisfied the first prong. And, by alleging gender-biased statements by decisionmakers and clear procedural irregularity, Plaintiff has satisfied the second prong. Therefore, the Court cannot dismiss Plaintiff's Title IX claim against Xavier.

## II. Witt's Motion to Dismiss Plaintiff's Defamation Claim

The Court now turns to Plaintiff's defamation claim against Witt. Plaintiff alleges that "Witt's allegation that [Plaintiff] raped her was a false statement of fact that she negligently, recklessly, and/or maliciously communicated to numerous people both within and outside Xavier University." (Compl., Doc. 1, ¶ 25.) Plaintiff specifically points to Witt's statement to Phelps that "she believed [Plaintiff] had raped her." (*Id*. at ¶ 14.) Witt argues that Plaintiff's defamation claim against her should be dismissed for two reasons: (1) the alleged defamatory statement was true and (2) Witt's statements were privileged. (Witt's Motion to Dismiss, Doc. 13, Pg. ID 204.)

The general pleading standards of Federal Rule of Civil Procedure 8(a)(2) apply to defamation claims. *See MedChoice Fin., LLC v. ADS All. Data Sys., Inc.*, 857 F. Supp. 2d 665, 673 (S.D. Ohio 2012). Under Ohio law, a prima facie case for defamation includes five elements: "(1) that a false statement of fact was made, (2) that the statement was

18

defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Fisher v. Ahmed*, 153 N.E.3d 612, 624 (Ohio Ct. App. 2020) (quotation omitted).

### A. Truth as an Absolute Defense

Truth is an absolute defense to defamation. *Maddox Def., Inc. v. GeoData Sys. Mgmt., Inc.*, 135 N.E.3d 1212, 1224 (Ohio Ct. App. 2019). "Whether a defamatory statement is substantially true is a question of fact." *Young v. Gannett Satellite Info. Network, Inc.*, 837 F. Supp. 2d 758, 764 (S.D. Ohio 2011) (citing *Sweitzer v. Outlet Commc'ns, Inc.*, 726 N.E.2d 1084, 1090 (Ohio Ct. App. 1999)). Witt argues that Plaintiff's defamation claim should be dismissed because Xavier's hearing panel found that Plaintiff was responsible for raping her. (Witt's Motion to Dismiss, Doc. 13, Pg. ID 204.) But, Witt does not cite any case law for the proposition that a university panel's finding is decisive in this context. Plaintiff alleges that he and Witt "engaged in consensual sex" and disputes Xavier's finding that he raped Witt. (Compl., Doc. 1, ¶¶ 13, 25, 32.) At this stage of the litigation, the Court must take the well-pleaded facts in Plaintiff's Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, Witt's argument is not well taken.

### B. Qualified Privilege

Witt next argues that Plaintiff's defamation claim should be dismissed because Witt's statements are covered by qualified privilege. (Witt's Motion to Dismiss, Doc. 13, Pg. ID 204). Under Ohio law, qualified privilege is an affirmative defense to defamation. *See Reddy v. JPMorgan Chase Bank, N.A.*, No. 2:09-CV-1152, 2011 WL 1641261, at *3 (S.D.

Ohio May 2, 2011) (citing *Costanzo v. Gaul*, 403 N.E.2d 979, 982 (Ohio 1980)). Generally, a plaintiff need not plead the lack of affirmative defenses to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Nevertheless, if the complaint "contains facts which satisfy the elements of the defendant's affirmative defense, the district court may apply the affirmative defense." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013); *see also Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1093 (S.D. Ohio 2021) (considering qualified privilege at motion to dismiss stage).

Qualified privilege applies when the publication is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975). In order for a publication to enjoy such qualified privilege, five elements must be satisfied: (1) the statement was made in good faith, (2) there was an interest to be upheld, (3) the statement was limited in its scope to this purpose, (4) a proper occasion, and (5) publication made in a proper manner to proper parties only. *Id.* at 719. A plaintiff seeking to overcome qualified privilege must set forth facts to plausibly support that the statement was made with actual malice. *See Green v. Mason*, 504 F. Supp. 3d 813, 831-32 (S.D. Ohio 2020). Under Ohio law, actual malice is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Mitchell*, 518 F. Supp. 3d at 1091 (quotations omitted).

Turning to the facts alleged here, "Witt had graduated from Xavier in 2013, was not a Xavier employee, and had no other relationship with the university." (Compl., Doc. 1, ¶ 12.) The relevant alleged sexual activity between Plaintiff and Witt took place on

20

December 31, 2019 at Plaintiff's home. (*Id.* at ¶ 13). On February 5, 2022, Witt informed Phelps—a professor at Xavier—that she believed Plaintiff had raped her. (*Id.* at ¶¶ 14, 25). The parties dispute whether Witt's communication to Phelps falls under the ambit of qualified privilege as recognized under Ohio law. However, the Court need not answer this question at this early stage because—even if qualified privilege applies—Plaintiff has sufficiently alleged that Witt acted with actual malice.

Plaintiff alleges that Witt "negligently, recklessly, and/or maliciously communicated" that she was raped by Plaintiff. (Compl., Doc. 1, ¶ 25.) The nature of the allegedly defamatory statement is particularly instructive in this case. Witt stated that she believed Plaintiff had raped her, and Plaintiff denies this by alleging that they had engaged in consensual sex. (*Id.* at ¶¶ 13, 14, 25.) Witt would have had direct personal knowledge regarding whether her statement was true or not. So, accepting the allegations in the Complaint as true, Plaintiff has sufficiently pled that Witt made the statement with actual malic. *See, e.g., Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1093-94 (S.D. Ohio 2021) (concluding that plaintiff pled actual malice because plaintiff alleged that defendant's statement—based upon personal knowledge—was false); *Schaumleffel v. Muskingum Univ.*, No. 2:17-CV-463, 2018 WL 1173043, at *8-9 (S.D. Ohio Mar. 6, 2018) (alleging that defendant made statements concerning non-consensual sexual contact with "actual malice" was sufficient to defeat conditional privilege claim at motion to dismiss stage). Therefore, the Court cannot dismiss Plaintiff's defamation claim against Witt.

## CONCLUSION

Based on the foregoing reasons, Defendant Xavier University's Motion to Dismiss

(Doc. 8) is **DENIED** and Defendant Eva Witt's Motion to Dismiss (Doc. 13) is **DENIED**.

**IT IS SO ORDERED.**

<div style="margin-left: 40%">

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

</div>