**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRUCE ERIKSON,

     Plaintiff,

     v.

XAVIER UNIVERSITY. et al.,

     Defendants.

Case No. 1:23-cv-66

McFarland, J.
Bowman, M.J.

**MEMORANDUM ORDER**

This matter was originally referred to the undersigned to resolve a pending motion for protective order filed by Defendant Eva Marie Witt. (Doc. 36). Following that referral, the presiding district judge referred an additional informal dispute related to the deposition of an expert witness. After reviewing the parties' submissions and hearing oral arguments, the Court **GRANTS** Defendant's motion for a protective order, and **DENIES** Plaintiff's oral request to compel Defendants' expert witness to appear for deposition at a lower hourly rate than the rate the expert ordinarily charges for his time.

**I.     Background**

In an Order filed on March 18, 2024 that denied Defendants' motion to dismiss, the Court previously set out the relevant background of this case. (Doc. 18.) Based on the procedural posture of the case, the Court's summary was based solely on the allegations contained in Plaintiff's complaint. The undersigned draws liberally from the prior Order and complaint to provide context for the pending discovery dispute.

Plaintiff Bruce Erikson was a tenured Associate Professor of Art for Defendant Xavier University for nearly a decade until his termination in October 2022. (Compl., Doc. 1, ¶¶ 6, 11.) This case primarily revolves around the events leading up to Plaintiff's termination: an allegation that Plaintiff had raped a former student and the investigative and administrative actions that Xavier took in response to her formal complaint.

Plaintiff began speaking with the former student, Defendant Witt, in 2019. (*Id.* ¶ 12.) Witt had graduated from Xavier years earlier, in 2013. She was not a Xavier employee and had no other relationship with Xavier at the time. (*Id.*) After communicating over several months and meeting on multiple social occasions, Witt suggested that she spend the night at Plaintiff's house on December 31, 2019. (*Id.*, ¶¶ 12-13.) That night, Witt visited Plaintiff at his house and the two had sex. (*Id.*, ¶ 13.) Plaintiff alleges that the sex was consensual. (*Id.*)

A little over two years later, on February 5, 2022, Witt told Defendant Kelly Phelps - a professor at Xavier who chaired the Department of Art from 2012 through 2019 – that Witt believed Plaintiff had raped her. (*Id.*, ¶¶ 9, 14.) Phelps urged Witt to report the allegation. (*Id.*, ¶ 14) Plaintiff was notified on February 24, 2022 that Witt had filed a formal complaint. In July 2022, Xavier held a hearing regarding Witt's allegations. (Doc. 1, ¶ 20.) Ultimately, the hearing panel found Plaintiff responsible for raping Witt and recommended termination. (*Id.* at ¶ 21.) Xavier terminated Plaintiff in October 2022. (*Id.*, ¶6.)

Relevant to the pending motion for protective order, Plaintiff's complaint includes a defamation claim against Witt for making the allegedly false statement that Plaintiff had

raped her.[1] (*Id.*, ¶¶ 24-26.) Plaintiff alleges that "Witt's allegation that [Plaintiff] raped her was a false statement of fact that she negligently, recklessly, and/or maliciously communicated to numerous people both within and outside Xavier University." (*Id.*, ¶ 25.)

Pursuant to the Corut's calendar order, discovery in this case is nearly complete, with an upcoming dipositive motion deadline of October 31, 2025. On August 29, 2025, the undersigned heard oral argument on two pending discovery disputes.

## II. Analysis

### A. Defendant's Motion for a Protective Order

Defendant Witt admits that she was involuntarily hospitalized at the Illinois Masonic Medical Center from February 7, 2019 through February 13, 2019 for an undisclosed mental illness. Plaintiff has propounded interrogatories that specifically request the names of Ms. Witt's treatment providers, the nature of any emotional or substance-related conditions for which treatment was received, and signed authorizations for release of all related mental health records, including her inpatient or involuntary commitment records. Such records are highly sensitive; Plaintiff does not dispute Defendant's contention that their disclosure could cause her embarrassment. Nor does Plaintiff dispute that many of the records are subject to a psychotherapist-patient privilege. But he does dispute the scope of that privilege.

Defendant Witt moved for a protective order on grounds that discovery of the records falls outside the scope of discovery, both because the records are irrelevant to Plaintiff's defamation claim and because they are privileged. Although Plaintiff did not file

---

[1] Plaintiff's complaint also includes a defamation claim against Defendant Phelps. In addition to the two defamation claims, the complaint sets out four claims against Defendant Xavier University, including claims for: Title IX discrimination Title VII discrimination, breach of contract, and public disclosure of private facts.

a written response, counsel submitted an informal response in accordance with the undersigned's practice and procedure prior to a telephonic hearing on the motion. At the telephonic hearing, Plaintiff orally requested an order compelling disclosure of the contested records.

Rule 26(b)(1), Fed. R. Civ. P. provides in part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id*. Defendant Witt's motion argues that in addition to the issues of relevance and privilege, she has demonstrated good cause for a protective order under Rule 26(c)(1), which permits entry of an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."

In contrast to Defendant Witt's position, Plaintiff argues that the records should be compelled because some of them are nonprivileged. Plaintiff further asserts that all of the requested records are relevant to the issue of credibility. The Court finds Defendant's arguments to be the more persuasive. The Court will grant Defendant's motion for a protective order primarily based on the irrelevance of the disputed records. Alternatively, the Corut concludes that any potentially relevant records fall within the scope of psychotherapist-patient privilege and that no waiver applies.

The issue of relevance is paramount. During oral argument, Plaintiff stressed that Defendant Witt's credibility in stating her belief that she had been raped on December 31,

2019 is at the heart of his defamation claim. Plaintiff alleges that Witt made that statement with personal knowledge that it was false – an allegation that the presiding district judge found was sufficient to plausibly allege malice. Plaintiff suggests that because Defendant Witt was incapacitated by mental illness in February 2019, the particulars of that illness including her diagnosis and treatment are relevant to prove that she could not be a credible witness either at the time of the alleged rape, at the time she reported it, and/or at trial in this case.

Any general implication that someone who has been treated for mental illness in the past cannot be a credible witness is frankly, offensive. But assuming that Plaintiff has some more specific reason for asserting relevance, the Court finds Plaintiff's showing of relevance to be extremely weak, if not non-existent, based in part on the passage of time between Witt's release from treatment and any events connected with this case. Plaintiff alleges that Witt first uttered the alleged defamatory statement *three years after* the end of her psychiatric treatment. And, while the alleged defamatory statement concerned a sexual encounter between Plaintiff and Witt dating back to December 31, 2019, even that event post-dated Witt's hospitalization by nearly ten months.

At oral argument, Plaintiff's counsel pointed to no additional legal or factual nexus between Witt's February 2019 hospitalization and the truth or falsity of Witt's 2022 statements about the alleged rape. Instead, Plaintiff argued only that because "credibility" is relevant, Plaintiff may obtain all of Defendant's past mental health records. The Court disagrees. In nearly every case (not merely defamation cases),[2] the credibility of the

---

[2] Unsurprisingly, Plaintiff cited to no case law or other controlling or persuasive authority to support the proposition that merely pleading a libel or defamation claim against a defendant automatically makes relevant that defendant's prior mental health records.

parties or their witnesses may be in issue. If Plaintiff's theory were to be accepted, the mental health records of any witness whose credibility is challenged would be discoverable.

The sole case cited by Plaintiff does not favor his position. "Evidence is relevant when it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence." *Schauf v. Estes Express Lines, Inc.*, No. 3:24-cv-273, 2025 WL 1928084, at *2 (S.D. Ohio July 14, 2025) (citing Fed. R. Evid. 401). To be discoverable, the "material fact" must relate to a "claim or defense." In *Schauf*, the defendant sought specific mental health records after the plaintiff testified at her deposition that she sought treatment from two mental health providers for emotional injuries arising from the accident at issue. The court agreed that the defendant could compel production of plaintiff's post-accident mental health treatment records because those records were directly relevant and material to plaintiff's claim of damages. Any privilege was waived by the fact that plaintiff had placed her emotional health directly in issue.

*Schauf* is easily distinguishable. In addition to the fact that the treatment records sought by Plaintiff significantly *pre-date* the events at issue here, Defendant Witt presents no claim for emotional distress damages relating either to the alleged rape or to Plaintiff's defamation claim. In other words, in no way has Defendant Witt placed her mental health treatment at issue in any pleading or defense, nor has she identified a mental health expert. So the requested records simply are not relevant to any claim or defense, including whether Plaintiff Erikson did or did not rape Defendant Witt nearly a year after her psychiatric treatment, whether Witt truthfully or falsely made a defamatory statement

about the alleged rape three years after her 2019 hospitalization, or whether she acted

with actual malice when she reported the alleged rape in 2022.

Should any reviewing court disagree with the undersigned and conclude that the

requested documents are in fact relevant to a material fact in relation to Plaintiff's

defamation claim or to Defendant Witt's defense thereof, the Court alternatively concludes

that any relevant documents would fall within the scope of the asserted psychotherapist-

patient privilege.

> [I]n a motion to compel action, it is the *movant's* burden to prove that the
> sought-after information is relevant. *Gruenbaum v. Werner Enters.*, 270
> F.R.D. 298, 302 (S.D. Ohio 2010). Once the movant has met this burden, it
> then becomes the burden of the party asserting privilege to establish that
> certain records are protected. *Karimian-Dominique v. Good Samaritan
> Hospital*, 139 N.E.3d 1237, 1241 (2019) (citing *Marcum v. Miami Valley
> Hosp.*, 32 N.E.3d 974, 982 (Ohio Ct. App. 2015)). The Court must strike a
> balance that allows action where a party needs "to access the information
> necessary to establish its claim" while prohibiting "overly broad requests
> that amount to a fishing expedition." *Brahmamdam v. TriHealth Inc.*, 2021
> WL 2555066, at *1, 2021 U.S. Dist. LEXIS 115929, at *3 (S.D. Ohio 2021);
> *Fears v. Kasich*, 845 F.3d 231, 236–37 (6th Cir. 2016).

*Schauf*, 2025 WL 1928084, at *2 (S.D. Ohio, 2025); s*ee also, generally*, *McCoy v.

Maxwell*, 139 Ohio App. 3d 356, 359, 743 N.E.2d 974 (2000) (reversing order compelling

psychiatric records in a defamation case despite the fact that the records sought were

those of the plaintiff, because "relevancy alone does not waive the physician-patient or

psychologist-client privilege" and the plaintiff's mental health was not affirmatively placed

in issue.)

Plaintiff concedes that many of the documents he seeks are subject to privilege.

And he implicitly concedes that no waiver to the privilege applies insofar as Defendant

Witt has not placed her mental health in issue, as did the plaintiff in *Schauff*.[3] But Plaintiff still seeks an order compelling disclosure of any *nonprivileged* "hospital records" from Plaintiff's psychiatric admission in February 2019 apart from the "confidential communications" created during any psychotherapy sessions that took place between Ms. Witt and her treatment providers. *See generally*, *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

It is true that Ohio's psychotherapist-patient privilege does not extend to non-confidential communications such as "the patient/psychotherapist's identity, the time of treatment, and/or the fact that any such treatment took place." *Langenfeld v. Armstrong World Indus., Inc.,* 299 F.R.D. 547, 552 (S.D. Ohio 2014) (citations omitted). But Witt has already identified nonconfidential information such as the dates of treatment and the fact that it took place, as well as the hospital where it occurred – despite the fact that *none* of that nonconfidential information appears to be relevant to the issues in this case. During the telephonic hearing, Plaintiff failed to identify to the undersigned <u>any</u> additional and specific nonprivileged responsive records he seeks that would be "relevant" to the allegedly "material" issue of Witt's credibility and therefore discoverable. The Court can conceive of no such relevant "nonprivileged" documents. For example, a hospital bill from her February 2019 admission would not require Witt's waiver (assuming that it would fall outside the scope of Ohio's privilege), but it remains a mystery as to how that psychiatric bill would be relevant to any claim or defense, including credibility.

---

[3]In *Schauff*, the court indicated that it would conduct an *in camera* review to determine the scope of waiver and/or whether all or only some of the mental health records should be produced. The court based that ruling on the plaintiff's contention that some of the records pertaining to treatment for substance use were irrelevant to her claim for emotional distress damages. *See Schauf*, at **3-4. An *in camera* review is not appropriate here, however, because none of the requested documents appear relevant and Defendant Witt has not waived the psychotherapist-patient privilege for *any* of the records.

**B.  Plaintiff's Motion to Compel Defendant's Expert to Reduce his Fee**

During the telephonic hearing on the more fully briefed motion for protective order, the parties requested a judicial ruling on a second issue concerning the propriety of the hourly rate charged by Defendant's expert, Brett Sokolow. Plaintiff has scheduled Mr. Sokolow's deposition for September 15, 2025, but objects to payment of the expert's regular hourly fee of $892.50 per hour. Plaintiff proposes paying a significantly reduced rate of $500.00 per hour for no more than 2 hours.

Pursuant to Fed. R. Civ. P. 26(b)(4)(E), a party must pay an expert a reasonable fee for depositions "[u]nless manifest injustice would result."  Using that standard, a court may exercise its discretion to determine the reasonableness of an expert's fee. *Bonar v. Romano,* No. 2:08–cv–560, 2010 WL 4280691, at *1, 2010 U.S. Dist. LEXIS 113110, at *2 (S.D. Ohio Oct. 25, 2010). "In assessing the reasonableness of an expert's fee, the Court should consider the expert's education, training and experience; the prevailing rate for comparable experts; and the nature and complexity of the information sought." *Burgess v. Fischer*, 283 F.R.D. 372, 373 (S.D. Ohio, 2012) (additional citations omitted). Case law suggests that flat fees – such as that at issue in Burgess  - are sometimes more closely scrutinized for reasonableness. *Id.* (reducing a physician's flat fee for depositions to his regular hourly billing rate). As a general rule, however, "[a]n expert's regular hourly rate for professional services is presumptively a reasonable hourly rate for deposition." *Bonar*, 2010 WL 4280691, at *1 (internal quotation marks and citation omitted.)

According to a copy of the curriculum vitae submitted by defense counsel, Mr. Sokolow is both the founder and the Chair of TNG Consulting LLC. Mr. Sokolow's C.V. describes his firm as "a national multidisciplinary risk management consulting and law

firm with more than 3,000 education-sector clients, 35 executive and support employees, a roster of 30 attorneys and consultants, and 40 investigators who are at the forefront of the field in their areas of expertise." In addition to his role with TNG, Mr. Sokolow also "has served as Executive Director, then President, and now Board Chair of ATIXA since 2012," described as a "leading industry association for Title IX compliance." Without repeating every detail contained in the C.V., it is obvious that Mr. Sokolow's experience and expertise in the Title IX area of law is extensive. Based on his C.V. and this Court's general familiarity with the range of expert fees charged in the Southern District of Ohio, the Court concludes that Defendant has carried its burden of proving the reasonableness of Mr. Sokolow's hourly rate. *See Premier Dealer Services, Inc. v. Allegiance Administrators, LLC*, No. .2:18-cv-735, 2023 WL 2664411, at *13 (S.D. Ohio March 28, 2023) (denying request to reduce expert fee of $725 per hour to "average expert witness hourly fee" reported in 2021 survey).

Notably, Plaintiff does not dispute that Mr. Sokolow regularly charges and receives $892.50 per hour for his expert opinions. Rather than challenging that uncontested fact, Plaintiff argues that this Court should require the expert to accept a heavily discounted hourly rate based on counsel's assertion that Plaintiff "cannot afford" his usual expert fee. Plaintiff's counsel posits that because most experts charge less for their services, the Court should force Defendant's expert to charge less. The Court disagrees.

Plaintiff Erikson is not the first litigant to complain of an unequal playing field due to an alleged disparity between his financial resources and the Defendants' resources. Litigation in federal court is expensive. As a result, many if not most litigants must make difficult choices concerning the number and identity of witnesses they will depose prior to

10

trial. In fact, some take no oral depositions at all, relegated based on budget or time constraints to written discovery.[4] No case law supports Plaintiff's position that it is the duty of a federal court to concern itself with each party's litigation budget, or to force a defense expert to accept a much lower hourly rate than he customarily charges in an effort to level the playing field.

Of course, there are cases where a court will exercise its discretion to reduce an expert's fee. But case law confirms that so long as the fee is "reasonable" and will not work a "manifest injustice," the court will not intervene. *Contrast*, e.g., Ratcliff v. Norfolk Southern Railway Company, No. 2:18-cv-715, 2020 WL 13469260, at *1 (S.D. Ohio, July 2, 2020) (reducing physician's flat rate of $4,000.00 for a deposition "up to four hours" to $1,500.00 for 90 minutes based on the agreement of <u>all</u> counsel that the latter was a "reasonable" rate for the time allotted.)

### III.   Conclusion and Order

For the reasons stated, **IT IS ORDERED THAT**:

1. Defendant Witt's motion for a protective order (Doc. 36) is **GRANTED.**
   Defendant Witt need produce no additional information or documents relating
   to her February 2019 hospital admission;

2. Plaintiff's construed oral motion to compel Defendant's February 2019 hospital
   records is **DENIED**;

3. Plaintiff's construed oral motion to compel defense expert Sokolow to appear
   for his deposition at a reduced hourly rate is also **DENIED.**

---

[4]Plaintiff is not a pauper and paid the full filing fee. But even if Plaintiff in this case were proceeding *in forma pauperis*, that status would not entitle him to a reduction in discovery-related litigation costs.

_s/Stephanie K. Bowman_
United States Chief Magistrate Judge